UNITED STATES of America et al.,
Petitioners, Appellees,

v.

ARTHUR ANDERSEN & CO.,
Respondent, Appellee,

and

Good Hope Industries, Inc.,
Intervenor, Appellant.

No. 79–1405.

United States Court of Appeals,
First Circuit.

Submitted Feb. 13, 1980.

Decided June 16, 1980.

Chester M. Howe, John M. Conley, and Gaston, Snow & Ely Bartlett, Boston, Mass., on brief, for appellant.

M. Carr Ferguson, Asst. Atty. Gen., Washington, D. C., Edward F. Harrington, U. S. Atty., Boston, Mass., Gilbert E. Andrews, Robert E. Lindsay, and Carlton D. Powell, Attys., Tax Division, Dept. of Justice, Washington, D. C., on brief for United States and Francis V. Murphy, appellees.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

This is an appeal arising out of an effort by petitioner Internal Revenue Service to enforce a summons under 26 U.S.C. § 7602. The summons, issued in the course of a tax investigation of intervenor Good Hope Industries, Inc., ordered Good Hope's accounting firm, respondent Arthur Andersen & Co., to produce certain "tax accrual workpapers"[1] and to testify concerning them. Both intervenor and respondent appealed from a district court judgment allowing the petition to enforce summons. After failing to obtain a stay of enforcement pending appeal from the district court, ourselves, and the Circuit Justice, Andersen complied with the summons. Because all of the contested workpapers had been produced, we dismissed Andersen's appeal as moot. *United States v. Arthur Andersen & Co.*, 623

F.2d 720 (1st Cir. 1980). This appeal by Good Hope escaped mootness by reason of preserving the question whether that part of the summons as yet unexecuted, commanding Andersen's testimony concerning the tax accrual workpapers, should have been enforced.

Good Hope raises four issues. The first, and most intricately woven, contention requires that one additional set of facts be noted. At the time the summons was issued, November 14, 1977, Good Hope was operating as a debtor-in-possession under Chapter XI of the Bankruptcy Act. Subsequently, in the spring of 1978, the IRS assessed taxes, penalties and interest against Good Hope and its subsidiaries and filed a proof of claim for the taxes (excluding penalties and interest) in the district court. The adjudication of these taxes is now before the bankruptcy court.

Good Hope argues that IRS, at the time the summons was issued, had lost all its section 7602 summonsing power and that the government, now capable of acting only through the Department of Justice, is confined in its discovery efforts to procedures under the Bankruptcy Rules. IRS may remain, according to Good Hope, only "an interested observer in the Bankruptcy proceeding". The fabric of the argument consists of the following strands: (1) Under 11 U.S.C. § 11(a)(2A), the bankruptcy court had the power to "determine any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed". (2) Under 26 U.S.C. § 7122, when a matter is referred to the Department of Justice for prosecution or defense, as were the claims for Good Hope's taxes here, only the Attorney General or his delegate may compromise any such case. (3) 26 U.S.C. § 6871(a), providing for immediate assessment upon adjudication of bankruptcy, entirely supercedes normal IRS assessment procedures; IRS, having exercised its assessment authority,[2] has lost any power to

---

1. For discussion of the nature of tax accrual workpapers, see *United States v. Arthur Andersen & Co.*, 623 F.2d 720 at 722 n.2 (1st Cir. 1980).

2. The fact that an assessment has been made does not, of course, bar a supplemental assess-

make further assessments. (4) Since the Department of Justice has available all the discovery procedures of Part VII of the Rules of Bankruptcy Procedure, it may not supplement them by using § 7602, since to do so would subject Good Hope to "unnecessary examination" in violation of 26 U.S.C. § 7605(b).

Interestingly enough, perhaps significantly, Good Hope has been unable to locate any cases dealing with the authority or lack of authority of IRS to enforce a section 7602 summons after the taxpayer is within bankruptcy court jurisdiction. We note the comprehensive scope and unambiguous tone of section 7602[3] and conclude that its reach and strength are not lightly to be reduced. In the absence of any direct limitation in the statutory language, we look for such an obvious conflict between the exercise of authority under section 7602 by IRS, under 11 U.S.C. § 11(a)(2A) and 26 U.S.C. § 6871(a) by the bankruptcy court, and under 26 U.S.C. § 7122 by the Department of Justice as to compel a limiting interpretation of section 7602.

■ As far as the authority of the bankruptcy court to "determine" tax questions is concerned, the authorities cited by Good Hope, such as *Sharpe v. Commissioner*, 69 T.C. 19 (1977), and *Tatum v. Commissioner*, 69 T.C. 81 (1977), merely recognize a lack of jurisdiction in the Tax Court to decide tax questions when a petition in bankruptcy preceded the filing of a petition for redetermination of deficiencies in the Tax Court. Such jurisdictional holdings say nothing about the power of the IRS to continue an investigation preparatory to the making of an assessment by the Commissioner of Internal Revenue. In fact, assessments were made in both *Sharpe* and *Tatum* after the filing of the petitions in the bankruptcy court.[4]

Similarly, we find no basis for inferring that because only the Attorney General may compromise a case that has been referred to the Department of Justice, such a referral terminates IRS investigating authority. Indeed, the Court in *United States v. LaSalle National Bank*, 437 U.S. 298, 312, 98 S.Ct. 2357, 2365, 57 L.Ed.2d 221 (1978), addressing an IRS referral to the Department of Justice for criminal prosecution, recognized that "[i]nteragency cooperation on the calculation of the civil liability is then to be expected and probably encourages efficient settlement of the dispute". In such a circumstance, however, the Court

ment if a prior one is "imperfect or incomplete". 26 U.S.C. § 6204.

**3.** 26 U.S.C. § 7602 provides:

"For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry."

For further indicia of the sweep of authority given the Secretary of the Treasury, see 26 U.S.C. §§ 6201, 6204, 7601, 7801.

**4.** Good Hope, as we have noted, has made the argument that normal IRS assessment procedures are "entirely superceded" by 26 U.S.C. § 6871(a), providing for immediate assessments of deficiencies upon adjudication in bankruptcy. Good Hope, for some reason beyond our ken, would have us overlook the qualifying clause, "despite the restrictions imposed by section 6213(a) upon assessments". The latter section establishes a time period following notice of deficiency that must elapse before an assessment may be made. Section 6871(a) simply removes this requirement in bankruptcy cases, and instead mandates immediate assessment of any deficiency that has been determined but has not been assessed at the time of adjudication of bankruptcy. *Cohen v. Gross*, 316 F.2d 521, 522–23 (3d Cir. 1963).

found that policies against judicial broadening of criminal discovery and infringement of the role of the grand jury mandated a "prophylactic restraint on the use of the summons". *Id.* at 313, 98 S.Ct. 2365. In the context of proceedings before the bankruptcy court, on the other hand, there is no policy consideration that suggests any need for curtailment of the interagency cooperation between IRS and the Department of Justice.

Good Hope has advanced the proposition that because the Department of Justice will have recourse to available bankruptcy discovery procedures, IRS resort to section 7602 should be barred. Its citation of *United States v. Kulukundis*, 329 F.2d 197 (2d Cir. 1964), is inapposite. A district court in a civil action had barred a summons inquiry into tax liability on the ground that it circumvented normal discovery under the federal rules of civil procedure. Although this issue was not before the court of appeals, the government not having appealed, Judge Friendly noted that the court did not wish to be associated with the view of the district judge. *Id.* at 199.[5] Good Hope's parallel invocation of 26 U.S.C. § 7605(b), barring "unnecessary examination", is not helpful. That section simply requires notification to the taxpayer before an additional inspection for a taxable year is undertaken. Here, there has not yet been any inspection of the sort requested, i. e., testimony, and even this is addressed not to the taxpayer but to a third party.

Not only do we see no statutory or case authority supporting the proposition that IRS loses its authority to investigate under a summons simply because an investigatee has come within the jurisdiction of a bankruptcy court, but we discern no supporting reasons of policy. In this case, for instance, we would see deep-seated administrative problems were IRS to be stopped in its tracks. The assessments for the years in question were made apparently to forestall the running of the limitations period; reassessments, down or up, may yet be called for;[6] no determination of deficiency has been made for 1976; the possibility of civil penalties[7] and criminal prosecution remains; some, but not all, of Good Hope's subsidiaries being examined are before the bankruptcy court. We cannot see anything but confusion, delay, and inefficiency resulting from such an enforced bifurcation of investigatory activities. Indeed, were the proposition to be valid, we could envisage asylum sorties into bankruptcy whenever the IRS chase became too hot.

We therefore hold that IRS did have authority to seek enforcement of the summons. This holding also goes far toward resolving Good Hope's second claim—that the summons is unenforceable because it was issued solely in aid of an ongoing criminal investigation. Special Agent Murphy testified before the district court that at no time had there been a recommendation for criminal prosecution by IRS to the Department of Justice. The investigation was a joint one, potentially leading to both civil and criminal sanctions. Nor had the civil portion of the investigation come to an end: not all years had been completely investigated; those assessments which had been made to protect against the running of the limitations period might be reopened; and proofs of claim could be modified. As the court said in *United States v. LaSalle Na-*

---

5. Indeed, the court went further and, after noting the possible reasonableness of barring summary methods of discovery in the preparation of criminal cases, said, "[I]t would be a quite different matter for the courts to construct a condition whereby the Government's bringing a civil suit rather than relying solely on summary methods of tax collection would deprive it of a remedy which the letter of the Code assuredly gives—particularly when Congress, in § 7605(b), prescribed such provisions for the protection of taxpayers as it wished to make." 329 F.2d at 199.

6. Although IRS may not seek redetermination in the Tax Court, it may petition the bankruptcy court to redetermine any deficiency already assessed. *See Cohen v. Gross, supra*, 316 F.2d at 522.

7. Such a matter, though civil, might well not have been within bankruptcy court jurisdiction under the applicable law. *Sowers v. State Bd. of Equalization*, 600 F.2d 1254 (9th Cir. 1979).

*tional Bank, supra,* 437 U.S. at 316, 98 S.Ct. at 2367; "[T]hose opposing enforcement of a summons do bear the burden to disprove the actual existence of a valid civil tax determination or collection purpose by the Service. . . . Without doubt, this burden is a heavy one."

As one commentator has summarized the law after *LaSalle,* "It seems that the institutional good faith requirement can be failed only where the decision to proceed criminally has been made at the final layer of review with the agency." Note, *Developments in the Law—Corporate Crime: Regulating Corporate Behavior Through Criminal Sanctions,* 92 Harv.L.Rev. 1227, 1326 (1979). Here, so far as the record shows, no decision to proceed criminally has been made at any level. The only basis for Good Hope's bad faith argument is that IRS "has ceded all of its authority to compromise, litigate or otherwise determine Good Hope's civil tax liability to the Department of Justice." That this argument is groundless was the effect of our earlier holding.

A third argument, quickly disposed of, is that despite *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1972), we ought to accord a limited privilege to tax accrual workpapers since they are exchanged with the expectation of confidential treatment much as are disclosures to an attorney. In *Couch,* the Court observed that no federal court has recognized an accountant-client privilege. The Court declined to create such a privilege "where records are handed to an accountant, knowing that mandatory disclosure of much of the information therein is required by an income tax return." *Id.* at 335, 93 S.Ct. at 619. Good Hope, citing Justice Brennan's concurrence stating that the Court was not expressing a *per se* rule, argues that unlike the taxpayer in *Couch,* it had an expectation in this case that its disclosure to Andersen would be kept inviolate. Despite this proffered distinction, our reading of the Court's opinion in *Couch* reveals nothing that mandates departing from the general rule to apply a privilege in this case.

■ This brings us to Good Hope's last claim, that the summons does not meet the requirement of section 7602(3) that the requested testimony relating to tax accrual workpapers "may be relevant" to ascertaining the correctness of its return or determining its liability for any internal revenue tax. *See United States v. Powell,* 379 U.S. 48, 57–58 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). Tax accrual workpapers are used by accountants in attempting to determine whether financial statements give a fair picture of the company's financial position. The specific objective is to obtain a figure representing the income tax properly attributable to all items of income and expense for a given year and an accrued balance to cover the estimated tax liabilities as of the balance sheet date. To arrive at this objective requires accountant and client to review tax-impacting facts, assumptions, and decisions to see what is the maximum or "worst-case" exposure to tax liability, what is a realistic reserve figure to accrue, and whether any tax contingency is so significant as to warrant disclosure to the public. While such papers are said to constitute no part of the tax return or its workpapers, they would seem to indicate the thinking of accounting analysts and policy makers about tax decisions as to which the pros and cons may be in near balance, and thus indicate soft spots where IRS could profitably probe.

The importance of the interests of all concerned—taxpayers, accountants, and IRS—is clear. That a resolution sensitively reflecting the legitimate interests of all and faithful to applicable statutes would involve the most delicate and demanding analysis of facts, research of law, and reflection on policy is equally clear. Precisely because we view the issue of "relevance" as so significant, we find this case in a poor posture to serve as the matrix for a precedent. The tax accrual workpapers have been produced. All confidential exchanges contained therein are public property. While no specific request for testimony has been made and no questions framed, it seems to us that there are three possibilities. First, the government, having obtained the workpa-

pers in this case, may have received enough information for its purposes or may conclude that the prospect of obtaining any additional information through questioning is not worth the trouble. Second, any questioning in this case might well be confined to explaining or clarifying information already revealed, and, since the basic documents are known to counsel, the relevance (or irrelevance) of the proposed questioning may be obvious. Finally, it is possible that the government may want to follow leads suggested by the workpapers by questioning Andersen employees on sensitive areas, deeming the risk of further delay worth taking. In such a case, were the questioning to be resisted and the issue brought before us, we would then have a concrete record to deal with.

We therefore hold as to this issue that because of the production of the records to which any questioning under the summons would relate, any decision regarding the possible relevance of such questioning under 26 U.S.C. § 7602 would be premature.

*The district court's order enforcing the summons is affirmed.*