**UNITED STATES of America, Plaintiff,**

v.

**NANLO, INC. (SOUTHBRIDGE EVENING NEWS), Defendant.**

Civ. A. No. 79–1291–F.

United States District Court,
D. Massachusetts.

Aug. 3, 1981.

Asst. U. S. Atty. Charles K. Mone, Boston, Mass., Charles R. McConachie, Chief, Consumer Affairs Section, Antitrust Division U. S. Dept. of Justice Washington, D. C., for plaintiff.

Michael J. Morrill, Morrill & Lamarine P. C., Southbridge, Mass., Arthur B. Hanson, Hanson, O'Brien, Birney & Butler, Washington, D. C., for defendant.

## MEMORANDUM

FREEDMAN, District Judge.

This action presents the question of whether a corporation in the business of publishing a newspaper is or should be excused from complying with Federal Trade Commission financial reporting requirements adopted pursuant to section 6 of the Federal Trade Commission Act, 15 U.S.C. § 46. The government seeks enforcement of the Federal Trade Commission's order, and assessment of the statutory forfeiture for non-compliance to date, all pursuant to sections 9 and 10 of the Federal Trade Commission Act, 15 U.S.C. §§ 49 and 50.[1]

1. 15 U.S.C. § 49 provides in relevant part:

Upon the application of the Attorney General of the United States, at the request of the commission, the district courts of the United States shall have jurisdiction to issue writs of mandamus commanding any person, partnership, or corporation to comply with this Act [15 U.S.C. §§ 41 et seq.] or any order of the commission made in pursuance thereof.

While the writ of mandamus has been formally abolished, see F.R.Civ.P. 81(b), the Federal Trade Commission may nevertheless proceed to secure the same remedy by an action of the nature brought here. See In Re FTC Corporate Patterns Report Litigation, 432 F.Supp. 274, 280–283 (D.D.C.1977), affirmed sub nom Appeal of FTC Line of Business Report Litigation, 595 F.2d 685, 704–05 (D.C.Cir.), cert. denied, 439 U.S. 958, 99 S.Ct. 362, 58 L.Ed.2d 351 (1978).

15 U.S.C. § 50 provides in relevant part: If any persons, partnership or corporation required by this Act [15 U.S.C. §§ 41 et seq.] to file any annual or special report shall fail so to do within the time fixed by the Commission for filing the same, and such failure shall continue for thirty days after notice of such default, the corporation shall forfeit to the United States the sum of $100 for each and every day of the continuance of such failure, which forfeiture shall be payable into the Treasury of the United States brought in the case of a corporation or partnership in the district where the corporation or partnership has its principal office or in any district in which it shall do business .... It shall be the duty of the various United States attorneys, under the direction of the Attorney General of the United States, to prosecute for the recovery of forfeitures.

Jurisdiction is also conferred by 28 U.S.C. §§ 1337, 1345 and 1355. The Court today addresses the parties' cross-motions for summary judgment, and various other motions.

## I.

Defendant Nanlo, Inc. ("Nanlo") is a Massachusetts corporation, the sole business of which is to produce the Southbridge, Massachusetts Evening News. Nanlo is wholly owned by Loren Ghiglione, who is both editor and publisher of the Evening News.

In the Spring of 1978, Nanlo was randomly selected to participate in the Federal Trade Commission ("FTC") Quarterly Financial Report Program ("QFR"). This program collects financial figures from about 15,000 corporations, and the aggregate figures are employed by numerous agencies for economic analysis and forecasting purposes.

Large corporations are currently required to file the QFR on a regular basis. Small corporations such as Nanlo are only required to participate for eight quarters. For Nanlo, this period began on January 1, 1978. The QFR for the first quarter of 1978 was filed on May 1, 1978. Completion of the form apparently required substantial effort on Nanlo's part.[2]

On behalf of Nanlo, Loren Ghiglione attempted to have newspapers, or at least the Evening News, removed from the QFR Program. These efforts proved unsuccessful. *See* Letter from Carol M. Thomas to Loren Ghiglione, dated March 14, 1978 [appended to Loren Ghiglione's motion to intervene].

While Nanlo was seeking to be dropped from the QFR Program, the FTC issued a Special Order, dated January 9, 1979, requiring Nanlo to file, within twenty-five days, a QFR for the three-month period ending December 31, 1978. Complaint, Exhibit C. That Special Order was received by Nanlo on January 12, 1979. Complaint, Exhibit E. No QFR was forthcoming, and Notice of Default was issued on February 14, 1979. Complaint, Exhibit F. That Notice was received by Nanlo on February 20, 1979. Complaint, Exhibit G. The QFR for the three-month period ending December 31, 1978 has never been filed, and the government commenced this action for enforcement and assessment of penalties on July 3, 1979. Only Nanlo's failure to submit one QFR, for the three-month period ending December 31, 1978, is at issue here.[3]

## II.

### A.

To secure summary judgment, a moving party must satisfy the bifurcated standard set out in F.R.Civ.P. 56(c), which provides:

The judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that [1] there is no genuine issue as to any material fact and [2] that the moving party is entitled to a judgment as a matter of law.

In this Circuit, the District Court must determine first whether a factual issue exists, and then whether such factual issue is material to the determination of the claim or defense. *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976).

The Court has reviewed the very thorough briefs of both parties, and is satisfied that no genuine issues of material fact are raised. The Court therefore turns to the substantive legal issues presented, in order to determine whether either party is entitled to judgment as a matter of law.

---

2. The affidavit of Loren Ghiglione indicates that 120 hours were required to collect the data requested. The reason for this is unclear, but it may be related to the fact that because Nanlo is wholly owned by one person, it does not regularly keep the type of records that would readily yield the information sought in the QFR.

3. The parties agree that Nanlo has in fact failed to submit seven QFRs, all of which are now overdue. From the nature of the arguments raised before this Court, it appears that any resolution of this case will likewise resolve the legal issues surrounding the other six QFRs.

### B.

■ The underlying authority of the FTC to require financial data in the form of the QFR is not disputed here. That authority is found in section 6(b) of the Federal Trade Commission Act, 15 U.S.C. § 46(b), which provides that the FTC shall have the power:

> To require, by general or special orders, persons, partnerships, and corporations engaged in or whose business affects commerce, excepting banks, and common carriers subject to the Act to regulate commerce, or any class of them, or any of them, respectively, to file with the commission in such form as the commission may prescribe annual or special, or both annual and special, reports, or answers in writing to specific questions, furnishing to the commission such information as it may require as to the organization, business, conduct, practices, management, and relation to other corporations, partnerships, and individuals of the respective persons, partnerships, and corporations filing such reports and answers shall be made under oath, or otherwise, as the commission may prescribe, and shall be filed with the commission within such reasonable period as the commission may prescribe, unless additional time be granted in any case by the commission.[4]

By resolutions dated June 20, 1961 [Complaint, Exhibit A] and June 28, 1973 [Complaint, Exhibit B], and pursuant to the authority of 15 U.S.C. § 46(b), the FTC acted to set up the QFR Program. The propriety of this procedure is firmly established. *In Re FTC Corporate Patterns Report Litigation*, 432 F.Supp. 291 (D.D.C.1977), *affirmed sub nom Appeal of FTC Line of Business Report Litigation*, 595 F.2d 685 (D.C.Cir.), *cert. denied, Goodyear Tire & Rubber Co. v. F. T. C.*, 439 U.S. 958, 99 S.Ct. 362, 58 L.Ed.2d 351 (1978). In order to exercise this power, the FTC need not show a specific enforcement purpose. The collection of data that will contribute to future policy-making is a legitimate purpose. *Federal Trade Commission v. Texaco, Inc.*, 555 F.2d 862, 875 n. 28 (D.C.Cir.), *cert. denied*, 431 U.S. 974, 97 S.Ct. 2940, 53 L.Ed.2d 1072 (1977); *Appeal of FTC Line of Business Report Litigation, supra*, 701–02.

### C.

■ Nanlo defends its failure to file the QFR primarily on a theory that newspapers should not be subjected to 15 U.S.C. § 46(b). This position finds no support on the face of the statute, because Nanlo is clearly a "corporation engaged in or whose business affects commerce," thereby coming within the ambit of 15 U.S.C. § 46(b).

Nanlo goes on to argue, however, that a corporation solely engaged in producing a newspaper is privileged under the First Amendment to decline participation in the QFR Program. This theory is rooted in a long line of case authorities which speak to the inherent dangers of excessive government intervention in the editorial functions of newspapers. *See, e. g., Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 258, 94 S.Ct. 2831, 2839, 41 L.Ed.2d 730 (1974); *Pittsburgh Press Co. v. Human Relations Commission*, 413 U.S. 376, 391, 93 S.Ct. 2553, 2561, 37 L.Ed.2d 669 (1973). As the Supreme Court has stated with respect to the First Amendment:

> The predominant purpose of the grant of immunity here invoked was to preserve an untrammeled press as a vital source of public information. The newspapers, magazines and other journals of the country, it is safe to say, have shed and continue to shed, more light on the public and business affairs of the nation than any other instrumentality of publicity; and since informed public opinion is the most potent of all restraints upon misgovernment, the suppression or abridgement of the publicity afforded by a free press cannot be regarded otherwise than with grave concern .... A free press stands as one of the great interpret-

---

4. 15 U.S.C. § 46(b) was subsequently amended, by addition of language not relevant to this case. Act of July 23, 1979, P.L. 96–37, § 1(b).

ers between the government and the people. To allow it to be fettered is to fetter ourselves.

*Grosjean v. American Press*, 297 U.S. 233, 250, 56 S.Ct. 444, 449, 80 L.Ed. 660 (1936).

■ While acknowledging the special protection afforded newspapers through the First Amendment, I am nevertheless unpersuaded that Nanlo is thereby excused from participation in the QFR Program. Unlike the intrusive governmental policies condemned in *Miami Herald Publishing Co., supra* (a statutory right of reply to editorial comment) or *Grosjean, supra* (a circulation tax), the QFR Program is blind to the fact that Nanlo is in the newspaper business. The QFR only requires financial data from Nanlo, and does not intrude upon the exercise of "editorial control and judgment." *Miami Herald Publishing Co., supra*, 418 U.S. 258, 94 S.Ct. 2840. To the extent that the burden of preparing the QFR may intrude on *business* control and judgment, Nanlo is treated no differently than any other corporation required to submit a QFR.

It is well established that the press is not shielded by the First Amendment from laws of general applicability. In particular, business aspects of press operations have long been held to be subject to the same standards as other commercial enterprises. *See Associated Press v. NLRB*, 301 U.S. 103, 130–33, 57 S.Ct. 650, 654–56, 81 L.Ed. 953 (1937) (National Labor Relations Act applicable to employment of reporters and editors); *Associated Press v. United States*, 326 U.S. 1, 65 S.Ct. 1416, 89 L.Ed. 2013 (1945) (Sherman Antitrust Act applicable); *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 192–94, 66 S.Ct. 494, 497–98, 90 L.Ed. 614 (1946) (minimum wage and overtime standards applicable to newspapers); *Securities and Exchange Commission v. McGoff*, 647 F.2d 185 at 190–91 (D.C.Cir. 1981). Nanlo itself concedes that it is subject to the requirements imposed by the Internal Revenue Code. Defendant's Brief at 28. In light of this precedent, and in view of the nature of the information here sought by the FTC, the Court can discern no First Amendment bar to extending the QFR Program to newspapers in general and to Nanlo in particular.

The balance of Nanlo's arguments as to the wisdom of, or necessity for, including newspapers as such in the QFR Program frame questions of policy. Such issues are properly committed to the wisdom of Congress, and to the discretion of the FTC. On the record presently before the Court, there is no need to address these matters further.

## D.

■ In addition to its First Amendment claims, Nanlo also argues that the requirements of the QFR are unduly burdensome to it as a small business. In an enforcement proceeding, however, "[s]ome burden on subpoenaed parties is to be expected and is necessary in furtherance of the agency's legitimate inquiry and the public interest." *Federal Trade Commission v. Texaco, Inc., supra*, 882.

■ The Supreme Court has established a basic standard for evaluating an agency investigative order, whether a subpoena or the QFR here at issue: "... it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 369, 94 L.Ed. 401 (1950); *see also Federal Trade Commission v. Texaco, Inc., supra*, 871–72. The authority of the FTC to request the QFR is clearly established here, *see* Part II, B, *supra*, and I do not understand Nanlo to seriously challenge the relevancy of the information sought. After having reviewed the affidavit of Jerold D. Cummins, Deputy Assistant General Counsel to the FTC (appended to the government's motion for summary judgment), and after having reviewed FTC Form MG–4 (a blank QFR; Complaint, Exhibit D), I am in any event satisfied that the information sought is relevant.

Nanlo must therefore rely on the "indefinite demand" language of *Morton Salt* if it is to prevail. This language has been con-

strued to address demands that are unduly burdensome or unreasonably broad. *Federal Trade Commission v. Texaco, Inc., supra,* 882. This gloss on *Morton Salt* stems from an earlier decision of the Supreme Court, *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946), which recognized a general requirement "that the disclosure sought shall not be unreasonable." *Id.,* 208, 66 S.Ct. 505; see *Appeal of FTC Line of Business Report Litigation, supra,* 703; *Federal Trade Commission v. Texaco, Inc., supra,* 871–72. The burden of demonstrating unreasonableness rests with the party asked to produce the information, and the burden is a heavy one where, as here, agency authority and relevancy are already established. *Federal Trade Commission v. Texaco, Inc., supra,* 882.

■ Upon review of the affidavits in this case, I am not persuaded that Nanlo has shown that it will suffer undue hardship in preparing and submitting the QFR.[5] While it apparently took 120 hours to prepare the first QFR, this is in the abstract an unilluminating figure. It does not necessarily follow that this is an unreasonable amount of time to spend on such a project, nor that subsequent QFRs will take as long to prepare. It is also worth noting in this context that Nanlo did not present its claims of undue burden to the FTC before refusing to prepare QFRs. During an extensive correspondence designed to relieve Nanlo from the burden of the QFR, only First Amendment issues were raised.

As a complement to the issue of burdensomeness, Nanlo also would have the Court recognize here that where the corporation whose records are sought is wholly owned by one person, a greater expectation of privacy attaches to those records. *Bellis v. United States,* 417 U.S. 85, 87–88, 94 S.Ct. 2179, 2182–2183, 40 L.Ed.2d 678 (1974).

That is clearly true in the Fifth Amendment context of self-incrimination addressed in *Bellis.*[6] However, in this case there is no question of self-incrimination, and I decline to employ *Bellis* to justify a balancing of rights here. As the Supreme Court noted in discussing the Fourth Amendment issues raised by *Bellis,* "a substantial claim of privacy or confidentiality cannot often be maintained with respect to the financial records of an organized collective entity." *Id.,* 92, 94 S.Ct. 2185.

As with its First Amendment argument, Nanlo does point to certain policy considerations involving the burdens imposed by the QFR Program. Such considerations, which go more to the wisdom of the Program than to its lawfulness, are not proper matters for this Court to address. I do note in passing that Congress has recognized some difficulties with the QFR, and has directed the FTC to substantially reduce the burden of compliance imposed upon small business. 15 U.S.C. § 46, proviso.

### E.

■ Nanlo suggests that any data it might submit could be subject to public disclosure by the FTC. This fear of public broadcast of confidential information is based upon nothing more than speculation at this time. Nanlo neither establishes the importance of keeping its QFR figures confidential, nor establishes that the possibility of disclosure is anything more than that—a possibility.

### III.

■ Two other matters warrant brief attention—Loren Ghiglione's motion to intervene as defendant, F.R.Civ.P. 24; and Nanlo's motion for stay of penalties imposed under 15 U.S.C. § 50.

---

5. The affidavit of Loren Ghiglione is captioned "Affidavit of Intervener." Although I have determined that Ghiglione's motion to intervene should not be granted, *see* Part III, A, *infra,* I have nevertheless considered it in determining whether Nanlo has met its burden of proving that the QFR is unduly burdensome. Absent this affidavit, there would be nothing on the record to support Nanlo's contention of burdensomeness.

6. Nanlo's Fifth Amendment argument is that it has suffered a compensable taking through the QFR. I find this wholly unsubstantial.

## A.

The motion to intervene is based on Ghiglione's status as sole shareholder in Nanlo. As such, he claims that Nanlo's finances are essentially his finances—and that he has a justifiable expectation of privacy in matters concerning his personal finances. I do not doubt that he does have such an interest in his personal finances, but Nanlo is nevertheless a separate entity with its own distinguishable finances. *Bellis v. United States, supra,* 92, 94 S.Ct. 2185. It is only those corporate finances that are of interest to the FTC. I also note that both Nanlo and Ghiglione are represented by the same counsel in this matter.

On these facts, while I might find that Ghiglione has an interest in Nanlo that may be impaired by a judgment for the government, I cannot find that the existing party (Nanlo itself) will inadequately represent that interest. There can thus be no intervention of right. *See* F.R.Civ.P. 24(a).

Even accepting that Ghiglione claims an interest in Nanlo within the ambit of Rule 24(a), it does not necessarily follow that his defenses and Nanlo's defenses share a common issue of law. The FTC is in no way impeding the First Amendment rights of Ghiglione, even if it arguably is impeding the rights of Nanlo. Despite the similarity of interests, Ghiglione and Nanlo are separate entities. By constituting Nanlo to insulate himself from personal liability, Ghiglione created an enterprise subject to the gamut of corporate laws. The same reasoning extends to the issue of whether the QFR is unduly burdensome. In light of this, I do not find that there are common issues of fact or law so as to support permissive intervention. F.R.Civ.P. 24(b).

Ghiglione places some reliance on *United States v. Coopers & Lybrand,* 413 F.Supp.

942 (D.Colo.1975), *aff'd* 550 F.2d 615 (10th Cir. 1977), wherein the District Court allowed a taxpayer to intervene in an action brought by the Internal Revenue Service against taxpayer's accountant for production of documents used in preparing taxpayer's return. *Coopers & Lybrand* arose under the provisions of 26 U.S.C. § 7602, which grants the IRS substantially broader investigative power than that enjoyed by the FTC under 15 U.S.C. § 46(b).[7] Moreover, this Court has previously considered the issues presented in *Coopers & Lybrand* and has specifically rejected the reasoning and the result embodied in that case. *United States v. Arthur Andersen,* 474 F.Supp. 322, 329 (D.Mass.1979), *aff'd* 623 F.2d 725 (1st Cir. 1980).

## B.

■ Nanlo has sought a stay of penalties which, pursuant to 15 U.S.C. § 50, have been accumulating at the rate of $100 per day since March 23, 1979. The government responds that these penalties are properly entitled statutory forfeitures, and notes that it does not oppose granting of the motion for stay.[8]

The Court is mindful of the novel issues in this case, and is convinced that Nanlo has raised reasonable objections in a good faith effort to test the validity of the QFR as applied to newspapers. *See St. Regis Paper Co. v. United States,* 368 U.S. 208, 226, 82 S.Ct. 289, 299, 7 L.Ed.2d 240 (1961). The Court is also aware that its workload precludes as expeditious a resolution as may be desirable. Consequently, the motion for stay of penalties will be allowed, retroactive to its date of filing on December 15, 1980.

## *Conclusion*

It appears to the Court that Nanlo, considered specifically as a newspaper or gen-

---

**7.** As a matter of interest, I note that the right of a taxpayer to intervene to challenge an IRS subpoena directed to a third-party recordkeeper is now recognized by statute. 26 U.S.C. § 7609 (added October 4, 1976).

**8.** The government's agreement to the stay was included in a document captioned "Plaintiff's Memorandum in Reply to Defendant's Opposition and Cross Motion for Summary Judg-

ment." Thus obscured, it was not noted by the Court until well after it could readily have been acted upon. While the defendant might properly have called the government's concession to the attention of the Court, the Court upon due consideration of the circumstances of this case, will not consider this omission as fatal to defendant's motion.

erally as a small business, is required to comply with the requirements of the QFR Program, as authorized by 15 U.S.C. § 46(b) and by FTC resolutions. Consequently, the government's motion for summary judgment shall be allowed, and Nanlo's cross-motion for summary judgment shall be denied.

The motion to intervene filed by Loren Ghiglione shall be denied. Nanlo's motion to stay penalties shall be allowed, retroactive to December 15, 1980 and continuing for thirty (30) days after the date of issuance of this Memorandum, in order to allow defendant an opportunity to file a QFR for the three-month period ending December 31, 1978.

The Court will not at this time issue an order as to any other outstanding QFRs, in the expectation that the parties will reach an accommodation as to that issue.

An appropriate order shall issue.