STATE of Tennessee, ex rel., Thomas H.
SHRIVER, District Attorney General
and Norman M. Lipman, President Wine
& Spirits Wholesalers of Tennessee,
Inc., Plaintiffs-Appellants,

v.

William M. LEECH, Jr., Attorney General
and Reporter, Defendant-Appellee.

Supreme Court of Tennessee.

Feb. 2, 1981.

Thomas H. Shriver, Dist. Atty. Gen., Waddey, Lundin & Newport, Keith M. Lundin, King & Ballow, Daniel C. Kaufman, Nashville, for plaintiffs-appellants.

William J. Haynes, Jr., Deputy Atty. Gen., William M. Leech, Jr., Atty. Gen., Nashville, for defendant-appellee.

## OPINION

COOPER, Justice.

This action in the nature of quo warranto and for declaratory and injunctive relief was filed in the Chancery Court of Davidson County challenging the authority and action of the Attorney General and Reporter of the State of Tennessee in issuing a "Civil Investigative Demand" directed to Norman M. Lipman, President, Wine & Spirits Wholesalers of Tennessee.[1] On considering a motion to dismiss, which was treated as a motion for summary judgment since it was predicated in part on affidavits, the chancellor dismissed the quo warranto phase of the case. In the other phase the chancellor declared the Civil Investigative Demand statutes[2] to be constitutional and dismissed the complaint generally.

The Court of Appeals affirmed the chancellor's decree dismissing the action in the nature of quo warranto. As to the other phase, the Court of Appeals concluded that the Tennessee Civil Investigative Demand Statute violated the due process, equal protection and search and seizure provisions of the Tennessee and United States Constitutions. The court also concluded that even if the CID statute were constitutional, the CID issued in this case was invalid in that it failed in material ways to comply with the requirements of the statute. The Court of Appeals then reversed that part of the chancellor's decree which dismissed the complaint generally and remanded the cause to the trial court for further action.

We agree with the Court of Appeals that the CID served on Mr. Lipman is invalid, not on the basis that the statute granting authority to the Attorney General and Reporter to issue a CID is unconstitutional, but rather on the basis that the CID was not issued by the proper party. Neither does it set forth with sufficient particularity the matter under investigation nor identify the parties to the inquiry.

The Attorney General and Reporter of the State of Tennessee, in performing the duties of his office, is empowered to issue civil investigative demands requiring the attendance of witnesses or the submission of documents, or both, in matters "where the State of Tennessee is a party litigant or there is reasonable cause to indicate it will be a party litigant." T.C.A. §§ 8–6–401 and 402. The form and content of the CID is set forth in T.C.A. § 8–6–402. That section states that testimony and documents may be required "in the case or matter therein stated" and that "the parties to the inquiry" shall be identified.

The CID served on Mr. Lipman was not issued by the attorney general and reporter, but was issued over the signature of William J. Haynes, Deputy Attorney General, in furtherance of "The Antitrust Division's (of the attorney general's office) Investigation of the Tennessee Liquor Industry." The parties to the inquiry were not identified in the CID, except insofar as Mr. Lipman was directed to appear at the office of the attorney general and reporter and bring with him certain documents from the files of the Wine & Spirits Wholesalers of Tennessee, Inc.

By letter, counsel for the Wine and Spirits Wholesalers of Tennessee, Inc., requested that the attorney general and reporter identify the parties under investigation and describe the conduct and the alleged viola-

---

1. See appendix to the opinion for a copy of the CID issued.

2. T.C.A. §§ 8–6–401 et seq. The full text of the statute is set forth as an appendix to the opinion.

tions of law under investigation. The attorney general and reporter, through Deputy Attorney General Haynes, refused both requests, standing on the efficacy of the CID as issued.

■ As pointed out by counsel for Mr. Lipman, "There is a due process right to refuse unreasonable and irrelevant investigative demands. *Oklahoma Press v. Walling*, 327 U.S. 186, 208–209, 66 S.Ct. 494, 505–506, 90 L.Ed. 614 (1946); *In re Gold Bond Stamp Co.*, 221 F.Supp. 391 (D.Minn. 1963), *aff'd* 325 F.2d 1018 (8th Cir. 1964); *Lewandowski v. Danforth*, 547 S.W.2d 470, 472–483 (Mo.1977). To exercise this right, the recipient of a CID must be sufficiently informed of the conduct under investigation to allow a determination of the reasonableness and relevancy of demands for inspection. *See Gold Bond, supra*, 221 F.Supp. at 397, T.C.A. § 8–6–402 makes explicit the requirement of specification implied under due process principles. Pursuant to the statute, the attorney general must state in the CID the 'case' that is pending or the 'matter' under investigation. . . ." The statute also requires that the CID identify the parties to the "case" or "investigation." None of these statutory requirements are met in the CID as issued.

Further, T.C.A. §§ 8–6–401 and 402 speak in terms of the attorney general and reporter issuing the CID. The debate in the House of Representatives on passage of the CID statute demonstrates that the legislators recognized the awesome power inherent in the use of a CID and that, if unbridled, the power could be abused. *See* Debate on House Bill 1728, February 25, 1976, House Tape # 62.[3] The legislature limited the use of a CID to matters where the state is a party litigant or there is reasonable cause to indicate that the state will be a party litigant. The latter base of authority for the issuance of a CID—the determination of reasonable cause—requires the exer-

cise *of considered* judgment which the legislature was content to permit the attorney general and reporter to exercise. As pointed out by the Court of Appeals, the power granted by the CID statute is of a quasi-judicial nature which should not be delegated absent express authority to do so.

■ The attorney general and reporter has cited us to T.C.A. § 8–6–103 for a general grant of authority to his deputies and assistants to exercise authority entrusted to the attorney general and reporter in the performance of his duties. From this, he argues that his deputy has authority to issue a CID. We cannot accept this premise. First, it is contra to the language of the CID statute which grants the power to issue a CID to the attorney general and reporter. The same statute makes a grant of authority of a "designee" of the attorney general and reporter but limits it to the administering of "all necessary oaths." If the legislature had intended the general grant of authority under T.C.A. § 8–6–103 *to control actions under the CID statute,* the grant of authority to a "designee" would be superfluous. Then too, there is the legislative history where one of the sponsors of the CID statute indicated the grant of authority to issue a CID was to one man—the attorney general and reporter. Finally, the power that rests in the hands of the person authorized to issue a CID and its potential for abuse if not used properly demands that the CID be issued only by the person named in the statute, the attorney general, and not the multitude of deputies and assistants employed by him in the performance of the duties of his office. *Cf. United States v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974); *State v. Farha*, 218 Kan. 394, 544 P.2d 341 (1975), cert. denied, 426 U.S. 949, 96 S.Ct. 3170, 49 L.Ed.2d 1186 (1976).

Normally a holding that the CID is invalid because of statutory deficiencies would

---

**3.** "Representative McWilliams (one of the sponsors of the bill):

And this only to give it to one man, now. It gives it to the Attorney General of the State of Tennessee.

"Representative Hicks:
Well, I tell you I had hoped that when we framed these constitutions that we didn't make any king makers and I'm afraid that's what you're fixing to do."

terminate an action challenging the efficacy of the CID. However, since a CID that meets the material requirements of the CID statutes could be issued, we deem it necessary to consider appellee's challenge to the basic authority of the attorney general to investigate possible violations of the antitrust laws of the State of Tennessee, and the challenge to the constitutionality of the CID statutes.

Both the chancellor and Court of Appeals concluded the attorney general has the authority to investigate possible violations of the antitrust laws of the state. We agree. Title 69, Chapter 1, T.C.A. forbids trusts, unlawful restraint of trade and discrimination. T.C.A. § 69–104 provides for forfeiture of charters and franchises of corporations violating T.C.A. §§ 61–101 and 103 and states:

It is made the duty of the attorney general to enforce these provisions.

The duty to investigate possible antitrust violations has not been delegated to any other individual or agency of state government. It logically follows that the statutorily created responsibility imposed on the attorney general to enforce the antitrust laws includes the authority to investigate possible violations.

The Court of Appeals held that the statutes authorizing the issuance of a Civil Investigative Demand are violative of the due process and equal protection provisions of the state and federal constitutions in that they "create a special advantage to the State as a litigant in the courts by granting to the attorney for the State an unlimited power of pre trial discovery which power is not granted to the adversaries of the State in its litigation . . ." citing *Wardius v. Oregon,* 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973). *Wardius* was an adjudicatory proceeding—a trial of a criminal offense. The defendant was required by statute to give notice of his intent to rely on an alibi defense and to reveal the names of witnesses to be called to establish the alibi, on penalty of being denied the privilege of asserting the defense. The state was not required to reciprocate by giving the defendant the names of witnesses it intended to call to rebut the alibi evidence. The court held that reciprocal discovery is required by fundamental fairness; and, in the absence of fair notice that the defendant would have an opportunity to discover the state's rebuttal witnesses, defendant cannot, consistently with due process requirements, be required to reveal his alibi defense.

■ We are of the opinion the CID statutes comport with the fundamental fairness requirement voiced in *Wardius, supra.* A CID can be issued by the attorney general and reporter only in two circumstances— one where the state is a party litigant, the other where there is reasonable cause to indicate the state will be a party litigant. Where the state is a party litigant, adversaries of the state are afforded a procedure for pretrial discovery. *See* Rules 26 through 37 of the Tennessee Rules of Civil Procedure. In those instances where there is reasonable cause to indicate that the state will be a party litigant, the CID is an investigatory proceeding, not an adjudicatory proceeding as in *Wardius, supra.* The purpose of an investigatory proceeding "is to discover and produce evidence not to prove a pending charge or complaint, but upon which to make one if, in the [agency's] judgment, the facts thus discovered should justify doing so." *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 201, 66 S.Ct. 494, 501, 90 L.Ed. 614 (1946).

In *Genuine Parts Company v. F.T.C.,* 445 F.2d 1382, 1388 (5th Cir. 1971), it is pointed out that:

A party under investigation may not contest the discovery and production of evidence in the same manner he may contest the use of that evidence in an adjudication by proper objection, by the introduction of other evidence, and the other safeguards traditional to an adversary proceeding under our system. An investigation does not determine guilt or innocence; that is done at the adjudication, and thus it is there the whole plethora of due process rights designed to insure the fairness of such a determination come to bear.

*See also, Hannah v. Larche,* 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960).

The advantage, if any, conferred upon the state by having the statutory right to pre-complaint discovery is minimal and is negated upon commencement of an adjudicatory proceeding by the fact that the state's adversary then has full discovery rights.

■ The Court of Appeals also held that the compulsory taking of testimony and production of documents under the Tennessee CID statute was violative of the 4th Amendment to the Constitution of the United States and Article 1, Section 7 of the Tennessee Constitution. In reliance on *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), the court determined that issuance of a CID required prior approval by a neutral and detached magistrate and reasoned that since the CID statute makes no provision for this judicial determination, it is unconstitutional. We do not agree, but are of the opinion that the CID issued in this case does not violate the constitutional prohibition against an unreasonable search and seizure.

In *Barlow's* the Court held that on-site searches under the the civil enforcement provisions of the Occupational Safety and Health Act of 1970 are subject to the Fourth Amendment warrant requirement of the Constitution of the United States, and that the statutory authorization for warrantless on-site inspections is unconstitutional. The Court went on to note, however, that the reasonableness of warrantless investigations by other administrative agencies "will depend upon the specific enforcement needs and privacy guarantees of each statute" and that "the facts and law" of individual cases will control. 436 U.S. at 321–22, 98 S.Ct. at 1825.

The CID issued in this case differs significantly from the on-site inspection in *Barlow's* in that the CID does not authorize an immediate intrusion into a protected zone of privacy, but authorizes the taking of testimony and the production of documents at a time subsequent to service of the CID. In that respect, the CID is analogous to an administrative subpoena, which has been the subject of much litigation wherein the subpoena was tested against the requirements of the Fourth Amendment. *See United States v. Morton Salt Co.,* 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950). *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946). *Cf. See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967).

In *See v. City of Seattle, supra* at 542–43, 87 S.Ct. at 1738–1739 the Court pointed out that:

[W]hen an administrative agency subpoenas corporate books and records, the Fourth Amendment requires that the subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome.... In addition, while the demand to inspect may be issued by the agency, in the form of an administrative subpoena, it may not be made and enforced by the inspector in the field, and the subpoenaed party may obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply.

■ The Fourth Amendment requirements set forth in *Barlow's* are basically the same as those required for investigatory subpoenas; however, the differences in timing and manner of intrusion into protected zones of privacy by the use of a surprise on-site inspection, such as the one in *Barlow's,* require different measures procedurally to ensure the reasonableness of the search. The critical factor in *Barlow's* was the demand for immediate entry and inspection of non-public premises over the objection of the owner. Under such circumstances, absent a requirement that the inspecting agency go before a neutral magistrate and secure a search warrant, the immediacy of the demand and inspection effectively would preclude any opportunity for a judicial determination of the reasonableness of the search. This is not the case where an administrative agency seeks information through the service of a subpoena. Given the time frame of a subpoena, it is

sufficient if the statute under which the subpoena is issued gives the subpoenaed party the opportunity to seek a judicial determination of the reasonableness of the demands, prior to the imposition of any sanction for his failure to comply. See *U.S. v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950).

The Tennessee CID statute provides the subpoenaed party with the requisite opportunity for a judicial determination of the reasonableness of the subpoena demands prior to the enforcement of the demand. T.C.A. § 8–6–404 requires judicial approval before any compulsory compliance or sanctions can be obtained by the attorney general and reporter for failure of the subpoenaed party to comply with the demand. If the subpoenaed party is of the opinion the requests contained in the demand are unreasonable, he can refuse to comply with the demand and raise the issue as a defense to any action brought by the attorney general and reporter to enforce compliance. *U.S. v. United Mine Workers of America*, 330 U.S. 258, 295, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947). Such a system of judicial review after a civil investigative demand is issued has been sanctioned. *See U.S. v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950).

■ Mr. Lipman also takes the position that the civil investigative demand denies appellees due process in that it requires him "to divulge privileged and protected matters and to forfeit his rights to judicial review." We see no merit in this contention. T.C.A. § 8–6–407 provides for the confidentiality of documents turned over to the attorney general pursuant to a civil investigative demand. Further, where contested, the production of documents can not be compelled by the attorney general without the approval of the chancellor. Any question of the appropriateness of the documents would be decided in the context of a judicial hearing, thus preserving the due process rights of appellees.

■ Appellees also argue that the civil investigative demand statute permits the attorney general to compel testimony in violation of a witness's privilege against self-incrimination. "The constitutional privilege against self-incrimination can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution." *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). The privilege against self-incrimination necessarily limits statutory procedures, whether or not such limitation is included in the statute, and a judicial procedure under which the subpoenaed party can invoke the privilege is provided in the CID statutes. T.C.A. § 8–6–405.[4]

The judgment of the Court of Appeals that the Civil Investigative Demand statute is unconstitutional is reversed. The judgment that the CID issued in this case is invalid is affirmed. The cause is remanded to the Chancery Court of Davidson County for further proceedings consistent with the opinion of this court. Costs incident to the appeal are adjudged against Wine & Spirits Wholesalers of Tennessee, Inc., and its surety.

BROCK, C. J., FONES and HARBISON, JJ., and CANTRELL, Special Justice, concur.

---

**4.** Also of interest is T.C.A. § 69–107 which grants immunity from criminal prosecution to a witness compelled to testify in an action to enforce the state antitrust statutes.

A  P  P  E  N  D  I  X

CIVIL  INVESTIGATIVE  DEMAND          EXHIBIT  A

STATE OF TENNESSEE          Antitrust Divi

NO.  001

Office of the Attorney General and Reporter
(Pursuant to Chapter 646, Public Acts of 1976)

In the Matter of:

The Antitrust Division's Investigation of the
Tennessee Liquor Industry
_____

To:

Norman Lipman, President
Wine & Spirits Wholesalers of Tennessee, Inc.
12th Floor - First American Center
Nashville, Tennessee

Pursuant to the request of Attorney General William M.
Leech, Jr.      . you are hereby commanded to appear before the
Attorney General and Reporter or his designated representative
on the 20th  day of March , 1979 , at 10:00 a.m.  o'clock
at Room 316, Attorney General's Office, 450 James Robertson
Parkway, Nashville, Tennessee

You are further commanded to bring with you the following:
All documents listed and demanded in Attachment 2 to this Civil
Investigative Demand and the signed original of the Affidavit of
Compliance in accordance with the definitions and instructions
that are Attachment 1 to this Civil Investigative Demand.  For
any questions contact William J. Haynes, Jr., Deputy Attorney
General
Witness, William H. Leech, Jr., Attorney General and
Reporter of the State of Tennessee, at Office in Nashville,
Tennessee.

ISSUED:  February 19, 1979.

WILLIAM M. LEECH, JR.
Attorney General and Reporter

By: s/William J. Haynes, Jr.
Deputy Attorney General
(615) 741-2672

TENNESSEE CODE ANNOTATED.
Sections 8–6–401 et seq.

8–6–401. Authority to give oaths and require testimony.—The attorney general and reporter, in performing the duties of his office where the state of Tennessee is a party litigant or there is reasonable cause to indicate it will be a party litigant is hereby empowered to require any person to testify under oath as to any matter which is a proper subject of inquiry by the attorney general and reporter. The attorney general and reporter or his designees are authorized to administer all necessary oaths.

8–6–402. Investigative demands for production of documents and testimony.—For

these purposes, the attorney general and reporter is empowered to issue civil investigative demands to require the attendance of witnesses or the submission of documents, or both, at specified times and places, to give testimony in the case or matter therein stated, mentioning the parties to the inquiry and the party at whose instance he is called, and, if necessary, requiring him to also bring with him any books, documents, or other writings, records or tangible objects under his control, which may be pertinent to the inquiry . . . .

8–6–403. Service of investigative demand.—Service of such civil investigation demand shall be had by a designated representative of the attorney general and reporter handing a copy of the demand to such witness, or if the witness cannot be found, then by leaving a copy of the demand at the residence or usual place of business of the witness. . . .

8–6–404. Failure to comply with investigative demand.—Failure of any witness to comply with the terms of a civil investigative demand shall be certified to the chancery court of the chancery division in which the witness resides, and such chancery court shall exercise the authority granted it by law in the treating of contempt of court matters, including but not limited to those powers granted in §§ 23–903—23–905; all to the end that the witness shall be compelled to appear to give testimony at the time and place specified by the chancery court.

8–6–405. Penalty for failure to testify when served with investigative demand.— Any witness who appears as directed by the civil investigative demand, but upon appearance refuses to testify on matters not privileged by law, shall be punished as prescribed in § 8–6–404 hereof.

\* \* \* \* \* \*

8–6–407. Confidentiality of writings, records or tangible objects obtained by attorney general.—All testimony, books, documents, or other writings, records or tangible objects obtained by the attorney general pursuant to §§ 8–6–401 and 8–6–402 shall be confidential and shall not be publicly divulged by the office of the attorney general except in the discharge of the duties of the office or in legal proceedings in which the state is a party.