IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 6, 2018 Session

## STATE EX REL HERBERT H. SLATERY III ET AL. v. CHEVRON CORPORATION ET AL.

### Appeal from the Chancery Court for Davidson County
No. 17-978-III      Ellen H. Lyle, Chancellor

_____

### No. M2018-00789-COA-R3-CV

_____

The Tennessee Attorney General issued several civil investigative demands ("CIDs") to several oil companies as part of an investigation into false claims and violations of the Tennessee Petroleum Underground Storage Tank Act, Tenn. Code Ann. §§ 68-215-101--204. Compliance was incomplete, but the Attorney General filed suit in 2015 in circuit court. Portions of the suit were dismissed, and the Attorney General took a nonsuit. The Attorney General then filed suit in the chancery court to enforce the CIDs. The oil companies sought a protective order, which the court granted. The Attorney General appealed. We reverse.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed

ANDY D. BENNETT, J., delivered the opinion of the Court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Herbert H. Slatery, III, Attorney General and Reporter, Andrée Blumstein, Solicitor General, Janet M. Kleinfelter, Deputy Attorney General, Olha Rybakoff, Senior Counsel, and Ann Mikkelsen, Assistant Attorney General, for the appellant, State of Tennessee.

William David Bridgers, John Edward Haubenreich, and Andrew Warth, Nashville, Tennessee, and David A. Higbee, Matthew W. Modell, and Ryan A. Shores, Washington D.C., for the appellees, Chevron Corporation, Chevron U.S.A., Inc., Star Enterprise, Texaco, Inc., and Unocal Corporation.

### OPINION

The focus of this appeal is a narrow one: whether a civil investigative demand (CID) issued by the Tennessee Attorney General remains enforceable under the circumstances of this case. In 1988, the Tennessee General Assembly passed the

Tennessee Petroleum Underground Storage Tank Act, Tenn. Code Ann. §§ 68-215-101--204. Among other things, the act established the petroleum underground storage tank fund ("the fund"). Tenn. Code Ann. § 68-215-110(a). If proper procedures are followed, the owner may receive "reimbursement from the fund for the costs of cleanup of contamination caused by releases from the tanks . . . ." Tenn. Code Ann. §§ 68-215-111(f)(2). The defendants have received millions of dollars in remediation costs since the creation of the fund.

On September 24, 2012, the Attorney General issued a CID to Chevron, USA, Unocal and Star Enterprise seeking to investigate possible violations of the False Claims Act and the Tennessee Petroleum Underground Storage Act. A second CID was issued to Star Enterprise on October 24, 2013. A third CID was issued to Star Enterprise on April 3, 2014, and a fourth CID to Chevron, regarding Chevron, Texaco and Unocal on April 4, 2014. After many discussions, the defendants never complied fully with any of the CIDs although many documents were supplied to the Attorney General.

The Attorney General filed suit against the defendants on August 5, 2015, alleging multiple violations of the Tennessee False Claims Act, Tenn. Code Ann. §§ 4-18-101--108, and the Tennessee Petroleum Underground Storage Tank Act, Tenn. Code Ann. §§ 68-215-101--204. The Attorney General alleged that the defendants fraudulently obtained double recoveries from both the fund and private insurers and that some funds were applied to ineligible sites.

The defendants moved to dismiss the complaint. In an order entered March 14, 2017, the trial court dismissed some of the False Claims Act claims as time-barred and other False Claims Act claims because the Attorney General had not pled them with the specificity required by Tenn. R. Civ. P. 9.02. The court also ruled that it had no jurisdiction over the claims regarding the underground storage fund. The trial court granted the Attorney General leave to file a second amended complaint, but prohibited further discovery. The Attorney General filed for a voluntary dismissal, and the trial court entered the dismissal order on March 24, 2017.

On September 8, 2017, the Attorney General filed a petition asking the chancery court to enforce the four CIDs previously issued to the companies. The State sought a finding of contempt and an order requiring full responses to the CIDs. The companies sought a protective order. The court granted the protective order and dismissed the State's petition with prejudice. The State appealed.

STANDARD OF REVIEW

A trial judge's decision to grant a protective order is reviewed by the appellate court using the abuse of discretion standard. *In re NHC–Nashville Fire Litig.*, 293 S.W.3d 547, 560 (Tenn. Ct. App. 2008).

Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning or that causes an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.

*Id.* (quoting *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citations omitted)). The party seeking to overturn the trial court's ruling on appeal has the burden of establishing abuse of discretion. *Id.*

ANALYSIS

The Attorney General of Tennessee has the authority to issue civil investigative demands:

The attorney general and reporter, in performing the duties of such office where the state is a party litigant, or there is reasonable cause to indicate it will be a party litigant, is hereby empowered to require any person to testify under oath as to any matter which is a proper subject of inquiry by the attorney general and reporter. The attorney general and reporter, or a designee, is authorized to administer all necessary oaths.

Tenn. Code Ann. § 8-6-401. Tennessee law enables the Attorney General to enforce CIDs in chancery court.

Failure of any witness to comply with the terms of a civil investigative demand shall be certified to the chancery court of the judicial district in which the witness resides, and such chancery court shall exercise the authority granted it by law in the treating of contempt of court matters, including, but not limited to, those powers granted in §§ 29-9-103--29-9-105; all to the end that the witness shall be compelled to appear to give testimony at the time and place specified by the chancery court.

Tenn. Code Ann. § 8-6-404.

The most fundamental rule of statutory construction is that the court should ascertain and effectuate the intention of the legislature. *Rodriguez v. State*, 437 S.W.3d 450, 453 (Tenn. 2014). The understanding of a statute's intent begins with the words used in the statute. *Embraer Aircraft Maint. Servs., Inc. v. AeroCentury Corp.*, 538 S.W.3d 404, 410 (Tenn. 2017). Consequently, courts give the words of the statute their natural

and ordinary meaning, study the statute's words in the light of the entire statute, and assume the legislature wanted each word of the statute to be given full effect. *Id*.

The language of Tenn. Code Ann. § 8-6-401 is plain. Only the Attorney General and Reporter may issue a CID. A CID may be issued "where the state is a party litigant, or there is reasonable cause to indicate it will be a party litigant." Tenn. Code Ann. § 8-6-401. The topic of the CID may be "any matter which is a proper subject of inquiry by the attorney general and reporter." The Attorney General is authorized to investigate many matters, including false claims involving state funds. Tenn. Code Ann. 4-18-104(a)(1).

The chancery court stated that *State ex rel. Shriver v. Leech*, 612 S.W.2d 454 (Tenn. 1981), *cert. denied*, *Lipman v. Leech*, 454 U.S. 836 (1981), provided "the framework to decide" this case. The chancellor observed that, "The premise the Supreme Court identified as key to fundamental fairness was that the advantage of precomplaint discovery via a CID is 'minimal and negated' upon commencement of litigation because 'the State's adversary then has full discovery rights.'" (quoting *Shriver*, 612 S.W.2d at 458). The Chancellor went on to state that:

> This Court's interpretation of *Shriver* and the premises of the CID Statute stated therein is that when a party is involved, the State makes a choice whether to continue with a CID investigatory process by means of enforcement under section 8-6-404 or, alternatively, to commence litigation, and the filing of a nonsuit does not erase the election made.

> *Shriver* stands for the proposition that under the CID Statute there is a divide and distinction between precomplaint investigative discovery, *i.e.* before the "commencement of litigation," versus the full discovery rights of a defendant in litigation.

> Applying the premise of the CID Statute stated by *Shriver*, this Court concludes that the State's Petition for Contempt filed herein, under the circumstances of this case, is antithetical to the premises established from the CID Statute in *Shriver*. When the series of events, unfolding from the 2012 issuance of the first CID with the massive investigation and production, to the State filing its Circuit Court lawsuit against the Defendants in August 2015, to the proceedings before Judge Binkley ending in 2017, are analyzed under the divide and distinction made in *Shriver* of precomplaint discovery versus full discovery rights of litigation, this Court concludes that *Shriver* does not countenance the State's attempt in this case to now return to an investigatory proceeding using CIDs. This Court's reading of *Shriver* is that to assure fundamental fairness under the Tennessee CID Statute, the distinction between precomplaint investigatory

- 4 -

discovery and litigation discovery must be maintained. The State's commencement of the Circuit Court case against these Defendants put the matter into litigation triggering the accompanying full discovery rights for the Defendants. The State crossed the proverbial Rubicon with its commencement of the Circuit Court case and the months of proceedings and rulings in that case. The fundamental distinction explained in *Shriver* is not maintained if this Court allows the State at this juncture to enforce the CIDs outside the bounds of the Tennessee Rules of Civil Procedure.

Accordingly, from all of the foregoing—the unique facts of the lengthy, massive 2012-2014 CID process, the decision by the State not to seek enforcement under section 8-6-404 in 2015, the facts of the filing of the 2015 litigation and proceedings therein until 2017, the distinction as a matter of law in *Shiver* between precomplaint investigative CIDs and those enforced during litigation against parties, and Tennessee nonsuit law— the Court concludes that once the State proceeded to litigation without using the section 8-6-404 enforcement remedy of the CID Statute, that statutory right was lost.

*Shriver* addressed several questions about the CID statutes. The Tennessee Supreme Court found that the Attorney General and Reporter must issue the CID, and that the CID in question did not sufficiently identify the parties or the conduct under investigation. *Shriver*, 612 S.W.2d at 455. The court further held that the CID statutes did not violate the due process, equal protection or search and seizure provisions of the State or Federal constitutions. *Id*. at 459. *Shriver* did not discuss use of a CID in an instance such as the one now before this court.  The Chancellor found guidance from the *Shriver* opinion's discussion of due process, where the court found that the advantage of pre-complaint discovery was negated when litigation began because the state's adversary could then have full discovery. *Id*. at 458. We do not read *Shriver* as prohibiting the state from using the previously issued CIDs after a nonsuit. That was not an issue.

The Chancellor read *Shriver* as causing the State to lose the right to enforce the CIDs once the State filed litigation. Yet, Tenn. Code Ann. § 8-6-401 allows the use of CIDs "where the state is a party litigant," as well as when "there is reasonable cause to indicate it will be a party litigant." Because a CID can be used when the State is in litigation, there is no statutory reason a pre-litigation CID would not continue to be effective after litigation is filed. Similarly, there is no statutory reason the same CID would not remain effective if the litigation was nonsuited.[1]

---

[1] We express no opinions as to any defenses the appellees might raise as to the scope of the CIDs or the effect of any rulings in the circuit court case.

The chancellor's opinion and the arguments of the appellees presume that the investigatory phase of this matter has ended.  It has not.  The filing of litigation does not mean that the plaintiff's investigation is over. Otherwise, there would be no need for discovery. The circuit court's rulings forced the Attorney General to reconsider the theory of the case and the evidence his office needed to provide to the court.  That is a valid reason for the subsequent nonsuit and the continuance of the investigation.[2]

Because the chancery court misapplied the law found in the CID statute, Tenn. Code Ann. § 8-6-401, and *Shriver*, we find that the court erred by granting a protective order on the basis that the filing of the litigation cut off the use of the CIDs.

CONCLUSION

The judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion.  The costs of appeal are assessed against the appellees, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[2] This is not to say that the plaintiff had to offer a reason for nonsuiting. "Rule 41.01 follows the liberal practice of allowing voluntary dismissals that existed in the circuit court before the adoption of the Tennessee Rules of Civil Procedure." *Willbanks v. Trousdale Cnty. Bd. of Educ.*, 1986 WL 1663, at *3 (Tenn. Ct. App. Feb. 7, 1986).  As the Tennessee Supreme Court held long ago, "[i]t has never been held by this court that plaintiff must show some good ground or sufficient reason for a nonsuit before being entitled to same." *Brackin v. McGannon*, 192 S.W. 922, 924 (Tenn. 1917).  *See also Graves v. Union Ry. Co.*, 152 S.W.2d 1026, 1029 (Tenn. 1941) (stating that the plaintiff was entitled to a nonsuit as a matter of right, without having to show good cause.)