IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 14, 2021 Session

**IN RE INVESTIGATION OF WALL AND ASSOCIATES, INC.**

**Appeal from the Chancery Court for Davidson County**
**No. 18-0606-I          Patricia Head Moskal, Chancellor**

_____

**No. M2020-01687-COA-R3-CV**

_____

Pursuant to its authority to investigate unfair or deceptive trade practices under the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 48-18-101, *et seq.*, Appellee Office of the Tennessee Attorney General ("AG") issued requests for information to Appellant Wall and Associates, Inc. ("Wall"). Tenn. Code Ann. § 47-18-106(a). Wall failed to comply with the AG's requests, and the trial court entered orders compelling compliance and issuing sanctions. Wall appeals. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

John R. Jacobson and W. Russell Taber, Nashville, Tennessee, for the appellant, Wall and Associates, Inc.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Olha N.M. Rybakoff, Senior Assistant Attorney General; and Margaret M. Siller, Assistant Attorney General, for the appellee, State Attorney General.

**OPINION**

**I. FACTUAL AND PROCEDURAL HISTORY**

Wall is a Virginia-based company that maintains an office in Tennessee. The company describes its business as one "that helps people solve their tax problems by providing legal services" by acting "as a taxpayer representative, fulfilling the role

expressly granted in the Taxpayer's Bill of Rights, 26 U.S.C. § 7803." On September 7, 2017, the AG served Wall with a Request for Information ("RFI") that contained, in relevant part, 24 requests for documents and 22 requests for written statements under oath. In accordance with the TCPA, the RFI stated that the AG had "reason to believe" that Wall "is engaging in, has engaged in, or . . . is about to engage in" certain unlawful conduct in violation of the TCPA in connection with its advertisement and provision of tax relief services. Tenn. Code Ann. § 47-18-106(a). Wall allegedly failed to comply fully with the RFI for eight months; accordingly, on May 14, 2018, the AG issued a 10-day notice to Wall under Tennessee Code Annotated § 47-18-106(c) advising that the AG intended to "initiate proceedings to enforce the RFI."

On June 1, 2018, the AG filed a Petition for an Order to Show Cause in the Davidson County Chancery Court ("trial court"), seeking an order under Tennessee Code Annotated § 47-18-106(c) compelling Wall's compliance with the RFI. The petition alleged that Wall had produced very limited information, including internal manuals, training documents, advertising information, and documents related to only thirteen selected Tennessee consumers; however, the AG alleged that Wall continued to withhold significant information, including documents related to the remaining Tennessee consumers along with certain financial information.[1] The trial court heard the AG's petition on December 21, 2018. From the bench, the trial court found that: (1) the AG "has the authority to issue the request for information based on 47-18-106(a)"; and (2) "the State has shown that it has reason to believe that there are deceptive practices in advertising." The trial court then proceeded to discuss each of the AG's requests, and, with some minor modifications, enforced the AG's RFI. The trial court entered an order on February 14, 2019, on its rulings from the December 21, 2018 hearing.

On July 10, 2019, Wall filed a motion for clarification of the February 14, 2019 order. By order of September 25, 2019, the trial court denied the motion in part and granted it in part. Specifically, the trial court denied Wall's requests to: (1) "compel the Attorney General to more specifically identify the conduct under investigation and the aim of its investigation"; (2) "limit the electronic mail custodians and to limit the search terms for request nos. 7, 17, and 20-21"; and (3) "deny the Attorney General's request for additional discovery from Wall's information technology contractor and Virginia outside counsel." The trial court granted Wall's motion "regarding Wall's proposed certification form" and defined the applicable time period for the requests.

Following the entry of the September 25, 2019 order, Wall allegedly remained largely non-compliant with the RFI. As such, the AG moved the trial court for an order: (1) compelling compliance with the February 14, 2019 and September 25, 2019 orders; (2) imposing sanctions; and (3) assessing a civil penalty of not more than $1,000. The trial

---

[1] There were originally two lawsuits filed against Wall, Case No. 18-0606-I and Case No. 18-0561-I. Case No. 18-0561-I was dismissed.

court heard the motion on May 26, 2020. By order of September 14, 2020, the trial court granted the AG's motion and ordered Wall to fully comply with the RFI within 20 days. The trial court imposed a penalty of $1,000 pursuant to Tennessee Code Annotated § 47-18-106(e) and awarded the AG its "reasonable attorney's fees and costs." By order of October 23, 2020, the trial court denied Wall's Tennessee Rule of Civil Procedure 59.04 motion to alter or amend its September 14, 2020 order. On November 13, 2020, the trial court heard the issue of attorney's fees and costs. By order of November 23, 2020, the trial court awarded the AG $5,000 in fees and costs. Wall appeals.

## II. ISSUES

The parties present several issues for review.[2] However, we perceive that there are two dispositive issues, which we state as follows:

1. Whether the Attorney General exceeded its statutory authority in the Request for Information issued to Wall in 2017.
2. Whether the trial court abused its discretion in sanctioning Wall for failure to comply with the Request for Information.

---

[2] Appellant presents the following issues for review:

1. Did the Chancery Court err in sanctioning Appellant for allegedly failing to comply with the State's Request for Information ("RFI") given that the RFI was not "sufficiently limited in scope, relevant in purpose, and specific in directive," as required by ***State ex rel. Shriver v. Leech***, 612 S.W.2d 454, 456 (Tenn. 1981), but instead had a grossly overly-broad scope, encompassing essentially everything Appellant does in the conduct of its business?
2. Did the Chancery Court err in sanctioning Appellant for allegedly failing to comply with the State's RFI given that in four years the State has not identified one act or omission it claims violates the Tennessee Consumer Protection Act, nor one consumer the State claims has been harmed, with the result that the RFI is not supported by a reasonable factual basis?
3. After Appellant had provided the State over 100,000 pages of documents and a full day of testimony, did the Chancery Court err by sanctioning W&A for alleged non-compliance with an indefinite and unsupported RFI with which W&A had made every reasonable effort to comply and when neither the State nor the Court had identified the alleged non-compliance?

Appellee states the issues as follows:

1. Whether the chancery court was correct in determining that the Request for Information was properly issued to Respondent, Wall and Associates, Inc., by the Tennessee Attorney General under the Tennessee Consumer Protection Act, subject to the limitations and modifications set by the court.
2. Whether the chancery court properly sanctioned Respondent for failing to comply with the Request for Information.

- 3 -

## III. STANDARD OF REVIEW

We review questions of law, including those of statutory construction, de novo with no presumption of correctness. *Clark v. Lowe's Home Centers*, 201 S.W.3d 647, 649 (Tenn. 2006). We review a trial court's decision to impose sanctions and its determination of the appropriate sanctions under an abuse of discretion standard. *Alexander v. Jackson Radiology Assoc., P.A.*, 156 S.W.3d 11, 14 (Tenn. Ct. App. 2004) (citing *Lyle v. Exxon Corp.*, 746 S.W.2d 694, 699 (Tenn. 1988)). An abuse of discretion occurs when the trial court "causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

## IV. ANALYSIS

### A. The Attorney General's authority to issue the RFI

Under the TCPA, "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices." Tenn. Code Ann. § 47-18-104(a). Section 47-18-106 of the TCPA grants the AG power to investigate such practices, to-wit:

> Whenever the attorney general has reason to believe that a person is engaging in, has engaged in, or, based upon information received from another law enforcement agency, is about to engage in any unlawful act or practice under this part, or has reason to believe it to be in the public interest to conduct an investigation to ascertain whether any person is engaging in, has engaged in, or is about to engage in such act or practice, the attorney general may:
> (1) Require the person to file a statement or report in writing, under oath or otherwise, as to all the facts and circumstances concerning the alleged violation and to furnish and make available for examination all documentary material and information relevant to the subject matter of the investigation;
> (2) Examine under oath any person connected to the alleged violation; and
> (3) Examine any merchandise or any sample of merchandise deemed relevant to the subject matter of the investigation.

Tenn. Code Ann. § 47-18-106(a). When interpreting a statute, this Court's duty is to "ascertain and give effect to the legislative intent." *Sharp v. Richardson*, 937 S.W.2d 846, 850 (Tenn. 1996). Based on the natural and ordinary meaning of the language used in the TCPA, and specifically in § 47-18-106(a), we conclude that the legislative intent was to grant the AG broad investigatory power. *See Methodist Healthcare-Jackson Hosp. v. Jackson-Madison Cty. Gen. Hosp. Dist.*, 129 S.W.3d 57, 67 (Tenn. Ct. App. 2003) ("In

- 4 -

the absence of ambiguity, legislative intent is derived from the face of a statute, and the Court may not depart from the 'natural and ordinary' meaning of the statute's language.") This power is, of course, subject to Constitutional limits. However, corporations "can claim no equality with individuals in the enjoyment of a right to privacy" and "law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest." ***United States v. Morton Salt Co.***, 338 U.S. 632, 652 (1950). This Court has previously recognized that

> [The U.S. Supreme Court has] set forth the Fourth Amendment standards for a request for information by a governmental agency.[3]
>
> The request is reasonable if it is "within the authority of the issuing governmental agency, . . . not too indefinite, and the information sought is reasonably relevant" to the subject matter of the investigation.

***Windsor Tower, Inc. v. Eaden***, 1983 WL 953709, at \*5 (Tenn. Ct. App. Jan. 26, 1983) (quoting ***Morton Salt Co.***, 338 U.S. at 652).

   1.  <u>Sufficiency of the factual basis for the investigation</u>

Wall argues that the state "failed to provide a sufficient factual basis for its enormously expensive, disruptive, and disproportionate investigation."

The RFI states that the AG has reason to believe that Wall "is engaging in, has engaged in, or is about to engage in unfair and deceptive acts and practices in violation of the [TCPA] . . . in connection with its advertisement and provision of tax relief services to consumers in Tennessee and elsewhere." In a declaration filed in connection with the AG's Petition for an Order Compelling Compliance with Investigative Subpoena, Assistant Attorney General Travis Brown provided the following information concerning the "reason to believe" element:

> 3. Prior to the issuance of the investigative subpoena to Wall on September 7, 2017, the Attorney General's Office received substantial information regarding potential unfair or deceptive acts or practices committed by Wall in the course of Wall's advertising and providing tax relief services to consumers in Tennessee and to consumers in other states

---

[3] The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

from its Kingsport office.

> 4. This information, among other things, formed the Attorney General's reason to believe that Wall was engaging in, had engaged in, or was about to engage in unfair or deceptive acts or practices in violation of the TCPA in connection with its advertisement and provision of tax relief services to consumers in Tennessee and elsewhere.

> 5. In early 2017, the Office of the Virginia Attorney General informed the Tennessee Attorney General's Office about an ongoing consumer protection investigation into Wall's business practices in Virginia. This referral of Wall's business conduct was made because Virginia discovered a large Wall office in Kingsport, Tennessee, that serviced Wall's consumers across the country.

> 6. The State of Virginia has since filed a consumer protection enforcement action against Wall. . . .[4]

> 7. The Attorney General then obtained hundreds of consumer complaints filed against Wall with various governmental and non-governmental agencies. Wall is aware of the content of these consumer complaints; Wall has provided some of these complaints to the Attorney General from its internal customer files. These consumer complaints identify a host of potential unlawful conduct in Wall's advertising and provision of tax relief services.

In support of his statements, Mr. Brown attached two of the consumer complaints as "illustrative examples of the vast number of consumer complaints that were in the Attorney General's possession prior to issuing the September 7, 2017 investigative subpoena to Wall."

In order "[t]o prove that a request for information was validly issued, [the Attorney General] must only show that they had the requisite 'reason to believe' required by T.C.A. § 47-18-106(a)." *In re Law Sols. Chicago LLC*, ---S.W.3d---, No. M2020-00411-COA-R3-CV, 2021 WL 223817, at *7 (Tenn. Ct. App. Jan. 22, 2021), *perm. app. denied* (May 12, 2021) (quoting *Windsor Tower*, 1983 WL 953709, at *3). Here, the AG has satisfied this burden. Applying the plain language of Tennessee Code Annotated § 47-18-106(a), either the information provided to the AG by the Office of the Virginia Attorney General

---

[4] The Virginia Attorney General's complaint, which was filed on September 13, 2017 in a Virginia circuit court, alleged, *inter alia*, that Wall "deceiv[es] consumers about its office locations; misrepresent[s] its average results; misrepresent[s] the specific results it can obtain for consumers; misrepresent[s] the duration and cost of its services; and misrepresent[s] its employees' tax-related experience, qualifications, and abilities."

or the consumer complaints alone evidence a sufficient basis for the AG to have reason to believe Wall was engaging in or had engaged in unfair or deceptive acts or practices such that it was in the public interest to conduct an investigation. Therefore, we conclude that AG was authorized to issue the RFI. We now turn to address the issue of whether the information requested under the RFI was sufficiently related to the subject matter of the AG's investigation.

2. Scope of the RFI

Wall argues that "the RFI was not 'sufficiently limited in scope, relevant in purpose, and specific in directive,' as required by *State ex rel. Shriver v. Leech*, 612 S.W.2d 454, 456 (Tenn. 1981)."

Wall's reliance on *Shriver* is misplaced, as *Shriver* is distinguishable from the instant case. In *Shriver*, the AG issued a civil investigative demand ("CID"), pursuant to Tennessee Code Annotated § 8-6-402, rather than an RFI under the TCPA. *Id.* The Tennessee Supreme Court held that the CID failed to meet the statutory requirements to "state in the CID the 'case' that is pending or the 'matter' under investigation" and to "identify the parties to the 'case' or 'investigation,'" and that it was not issued by the attorney general. *Id.* at 455–456; Tenn. Code Ann. §§ 8-6-401, -402. The TCPA, however, does not include the same requirements.

Nevertheless, Wall asserts that "[i]mplicit in [§ 47-18-106(a)] is that the State identify 'the alleged violation'" and that "due process principles implicitly require disclosing the case that is pending or the matter that is being investigated." In context, section 47-18-106(a)(1) provides that, if the AG has "reason to believe that a person is engaging in . . . any unlawful act or practice [under the TCPA]," it may "[r]equire the person to file a statement or report . . . as to all the facts and circumstances concerning the **alleged violation** . . . ." (emphasis added). Contrary to Wall's appellate argument, we do not read the phrase "alleged violation" in section 47-18-106(a)(1) to require the AG to explicitly identify the matter under investigation. Rather, this section of the statute puts the onus on the party being investigated to comply with the AG in its investigation. This reading is necessary in order for the AG to exercise his or her investigatory power granted in section 47-18-106.[5] As this Court has previously explained:

> The power given to [the AG] to compel production of testimony and documents or materials is intended to allow [the AG] to obtain information about whether unfair and deceptive trade practices are taking place and to ascertain if an enforcement action is warranted. *Cf.*, ***People ex rel. Babbitt v.***

---

[5] The TCPA is to be "liberally construed" to promote its policies, Tenn. Code Ann. § 47-18-102(2), and this Court's aim "is to construe a statute in a way that avoids conflict and facilitates the harmonious operation of the law," **Lee Med.**, 312 S.W.3d at 527.

*Herndon*, 119 Ariz. 454, 581 P.2d 688, 691 (1978); *State ex rel. Danforth v. Independence Dodge, Inc.*, 494 S.W.2d 362, 366 (Mo. App. 1973). To require [the AG] to make out a cause of action at the compliance hearing would "require (them) to know in advance what (they) cannot know until the investigation is completed." *Mobil Oil Corp. v. Killian*, 30 Conn. Sup. 87, 301 A.2d 562, 565 (1973).

*In re Law Sols. Chicago LLC*, 2021 WL 223817, at *7 (quoting *Windsor Tower*, 1983 WL 953709, at *3–4). Accordingly, the correct standard for judging the reasonableness of an RFI issued pursuant to § 47-18-106 is the "reasonably related" standard. *See id.*, at *7. It is necessarily a low threshold, as an overly strict standard of relevancy "would substantially frustrate the enforcement of the [TCPA]." *Windsor Tower*, 1983 WL 953709, at *5. Indeed,

> [i]t should be borne in mind that the purpose of such an investigation . . . is to uncover matters previously unknown to the investigating body which may or may not provide grounds for further action. It cannot know in advance what its investigation may produce; therefore, the most that can be required is that the investigator provide a "reasonably informative description" of what is required.

*Id.* at *5–6 (quoting *Scott v. Ass'n for Childbirth at Home, Int'l*, 430 N.E.2d 1012, 1021–1022 (Ill. 1981)) (bracketed text omitted). Here, the AG provided Wall with a "reasonably informative description" of the scope of its investigation in a February 7, 2018 letter from Assistant Attorney General Brown to Wall's attorney. This letter provided a non-exclusive list of nine "provisions of Tenn. Code Ann. § 47-18-104 the Attorney General is considering in his investigation."

On February 14, 2019, the trial court entered an "Order Granting in Part and Denying in Part Attorney General's Petition for an Order Compelling Wall and Associates, Inc. to Comply with Request for Information." The RFI required Wall to respond to 24 requests for production of documents ("RFPs"), 22 written statements under oath ("WSUOs"), and to provide sworn testimony from competent witness on eleven topics. Of the 24 RFPs: (1) the AG decided not to pursue two of them; (2) Wall had no objection to five others (and had already complied with some of them); and (3) the trial court denied two requests and part of another on its finding that compliance would be overly burdensome even though the requests were relevant. After modifying four requests in order to limit the scope to Wall's business activities in Tennessee, the trial court ordered compliance with the remaining requests. However, recognizing that some materials may be subject to privilege, the trial court directed that, "[I]f there are privileged materials, then the court would need to know in Wall's response that they are privileged and what they are, in a privilege log." With respect to the WSUOs, seven were not disputed. The trial court ordered compliance with the remaining WSUOs and gave clarifying instructions that

identified where and how Wall's compliance was lacking.[6] The trial court also instructed Wall as to how it should respond to any WSUOs for which the company lacked information.

Although we will not extend the scope of this opinion to address each of the AG's requests individually, we have reviewed each against the trial court's explanations and modifications as set out in its orders. From our review, we conclude that the AG's RFI, as modified by the trial court, is sufficiently limited in scope. Specifically, the AG's requests are: (1) reasonably relevant to the subject matter of the investigation, *i.e.*, unfair and deceptive acts or practices by Wall; and (2) not too indefinite, as they provide a "reasonably informative description" of what is required. *See Windsor Tower*, 1983 WL 953709, at *5–6. Furthermore, there is no evidence to show that compliance with the RFI would unduly burden Wall. *See id.* at *6 (quoting *United States v. Nanlo, Inc.*, 519 F.Supp. 723, 728 (D.C. Mass. 1981)) ("Where agency authority and relevancy are established, '[t]he burden of demonstrating unreasonableness rests with the party asked to produce the information.'").

### B. Sanctions for failure to comply with the RFI

Tennessee Code Annotated § 47-18-106(e) provides, in relevant part:

> Any person who has received notice of a request for information . . . and with intent to avoid, evade, or prevent compliance, in whole or in part, with any civil investigation or order under this part, . . . conceals, withholds, destroys, mutilates, falsifies or by any other means alters any documentary material in the possession, custody, or control of any person subject to such notice, shall be subject to a civil penalty of not more than one thousand dollars ($1,000), recoverable by the state in addition to any other appropriate sanction.

---

[6] The following is a representative example from the order:

> **Statement 20** asks Wall to "[d]escribe in detail your factual basis for the claim that you 'deliver one of the highest rates of acceptance by the IRS.'" Wall has represented that it has not objected to this item and already answered it. Wall also stated that it stopped making this representation. The Court finds that Wall provided a limited response for the year 2013, which is not the relevant time period defined in the Attorney General's RFI, and that Wall will need to amend its answer to address the years that are at issue in the Attorney General's investigation, by year, beginning with 2014 and going forward. The Court further finds that to the extent Wall is claiming that it stopped making this representation, then Wall must identify in its answer the date on which Wall stopped making the representation and explain that it does not have anything that it is relying on, or if Wall is relying on the 2013 numbers. Therefore, Wall is hereby ORDERED to fully respond to Statement 20 as set forth in this Order and complete the Certification within 45 days of entry of this Order.

(Citations to the record omitted.)

In its April 29, 2020 "Motion for an Order Compelling Compliance, Imposing Sanctions, and Assessing Civil Penalties, Pursuant to Tenn. Code Ann. § 47-18-106(e)," the AG alleged that Wall had not complied with the trial court's order of February 14, 2019, and asked the trial court to impose the $1,000 penalty contemplated under section 47-18-106(e), and to further impose the following sanctions:

> (1) an order that Wall and Associates retain a vendor to conduct the search and production of ESI, which Wall and Associates has refused to perform (or alternatively, an order authorizing the Attorney General to select an independent, third-party eDiscovery vendor to conduct these searches); and (2) an order that Wall reimburse the Attorney General's Office for the costs and attorney's fees that the Attorney General's Office incurred in bringing this motion[.]

The trial court heard the AG's motion on May 26, 2020. By order of September 14, 2020, the trial court granted the AG's motion and imposed a penalty of $1,000. Furthermore, the trial court awarded the AG costs and reasonable attorneys' fees associated with the motion to compel. As noted above, the trial entered an order on November 23, 2020, awarding the AG $5,000 in attorney's fees and costs

Wall argues that the trial court erred issuing the foregoing sanctions for its non-compliance with the RFI because "[n]o one . . . has ever been able to identify the supposed noncompliance that resulted in these sanctions." Furthermore, Wall contends that

> [b]efore the May 26, 2020 hearing on the State's motion to compel and for sanctions, W&A had produced over 100,000 pages of documents, including 330 Tennessee customer files, advertisements, emails, training materials, recruiting and hiring documents, templates for working with taxing authorities, pleadings and correspondence regarding other governmental proceedings, employee lists and contact information, tax returns, and financial information. The production had included everything the Court had required . . . .[7]

Contrary to Wall's contention, both the AG and the trial court identified Wall's numerous failings to comply with the AG's RFI and the trial court's order related to the RFI. For example, at the May 26, 2020 hearing, Assistant Attorney General Brown stated that, since entry of the trial court's September 25, 2019 order, Wall had made only one supplemental response. Even so, Mr. Brown clarified that this supplemental response was not made until May 23, just a few days before the hearing, and the tendered response did

---

[7] Despite Wall's contention that prior to the May 26, 2020 hearing it had produced everything the court required, Wall provided additional documents in October and November of 2020.

not include the documents requested in RFI numbers 7 and 17. Specifically, Assistant Attorney General Brown stated:

> The Attorney General's office received 1,415 documents on Saturday morning and, of those, 1,228 were emails. It's a far cry from the 700,000 documents that were allegedly responsive to these search strings. And what's curious, Your Honor, is that going through these documents that were produced, they don't seem to have even been responsive to the search strings that were agreed upon.

In its September 14, 2020 order granting the AG's motion, the trial court stated: "[T]he Attorney General states that [Wall] has refused to produce electronic communications in response to document request numbers 7, 17, and 20-21, and certain financial information in response to document request number 23 and written statement number 18." Furthermore, Wall "did not provide the court with any supplementation to its response to the motion to compel, confirming its compliance."[8] The trial court concluded:

> The court finds that [Wall] received notice of the 2017 RFI and the court issued Orders on February 14 and September 25, 2019, compelling [Wall's] compliance with the 2017 RFI, as modified. [Wall] has failed to fully comply with the 2017 RFI and the court's Orders. The court finds that [Wall's] refusal is with the intent to avoid or evade full compliance under Tenn. Code Ann. § 47-18-106(e). The court concludes that the imposition of a civil penalty of $1,000 against [Wall] is warranted and is recoverable by the state.
>
> The court further finds that the Attorney General's motion to compel was necessitated by [Wall's] continuing noncompliance with the 2018 RFI and the court's February 14 and September 25, 2019 Orders, warranting an award of the Attorney General's costs and reasonable attorneys' fees associated with the motion to compel as an additional appropriate sanction under Tenn. Code Ann. § 47-18-106(e).

We review the trial court's decision to award sanctions under the abuse of discretion standard, which "reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives," and does not permit us to substitute our discretion for that of the trial court. *Lee Med.*, 312 S.W.3d at 524. Accordingly, we will not disturb a trial court's discretionary decision unless "the trial court has misconstrued or misapplied the controlling legal principles or has acted inconsistently with the substantial weight of the evidence." *Griffith Servs. Drilling, LLC v. Arrow Gas & Oil, Inc.*, 448 S.W.3d 376,

---

[8] Moreover, although it repeatedly claimed to have complied with the trial court's order, Wall did not provide certification of compliance to the trial court until October 9, 2020 (at the hearing on Wall's motion to revise the September 14, 2020 order).

379 (Tenn. Ct. App. 2014) (quotations omitted). Here, the trial court clearly considered and applied Tennessee Code Annotated § 47-18-106(e), and its decision on sanctions was not against the weight of the evidence. The penalties imposed on Wall were within the scope of alternatives set forth in § 47-18-106(e). Therefore, we conclude that the trial court did not abuse its discretion in sanctioning Wall for failure to comply with RFI and the trial court's orders.

## IV. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of this appeal are assessed to the Appellant, Wall and Associates, Inc., for all of which execution may issue if necessary.

_____s/ Kenny Armstrong_____
KENNY ARMSTRONG, JUDGE