# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
May 13, 2025 Session

## KATHLEEN MARQUARDT v. THE UNIVERSITY OF TENNESSEE AT KNOXVILLE

**Appeal from the Circuit Court for Knox County**
**No. 2-197-20        William T. Ailor, Judge**

_____

### No. E2024-00891-COA-R3-CV

_____

This Tennessee Public Records Act ("TPRA") dispute concerns emails and documents (the "Materials") requested by Kathleen Marquardt ("Ms. Marquardt") from the University of Tennessee at Knoxville ("UTK"). Ms. Marquardt argued that the Materials, which include emails pertaining to an article authored by a part-time UTK employee that was published in the *Huffington Post*, were public records because they were created as a part of the official business of the university in furtherance of its goal of becoming a top-25 university. Following an in camera review of the Materials by the trial court only and a show-cause hearing, the trial court ruled in UTK's favor, holding that "the requested records do not meet the definition of the [TPRA] statute; that these records were made or received pursuant to law or ordinance, or in [connection] with the transaction of official business by any governmental entity." Ms. Marquardt challenges this ruling as well as other rulings including the denial of her motion for "an attorney's eyes only" review of the Materials and the denial of her discovery requests. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the court, in which THOMAS R. FRIERSON II and KRISTI M. DAVIS, JJ., joined.

Dean T. Howell and Kaitlyn E. Hutcherson, Knoxville, Tennessee, for the appellant, Kathleen Marquardt.

T. Harold Pinkley, Knoxville, Tennessee, for the appellee, The University of Tennessee at Knoxville.

### OPINION

### FACTS AND PROCEDURAL HISTORY

In August of 2019, various and sundry documents—the product of an office cleanout—were left on a conference table in the engineering department at UTK for others to take before they were discarded. Dr. Christopher Cherry, a professor in the Department of Civil and Environmental Engineering, looked through the documents and took an old *Mining Congress Journal* (the "Journal") publication from August 1966, which contained an early discussion of what the scientific community now calls climate change, specifically, the effects of coal mining on the environment. He took it home because he thought it would be of interest to his wife and her family, who had been involved in the coal mining industry.

Thereafter, Dr. Cherry shared the Journal with Elan Young, a part-time employee of the university who also worked as a freelance journalist, knowing she had an interest in the subject. While acting in her capacity as a freelance writer, Ms. Young authored an article titled "Coal Knew, Too" (the "Article") for the *Huffington Post*. While Dr. Cherry did not participate in writing the Article, he was interviewed by Ms. Young and was quoted in the Article.

The Article was published by the *Huffington Post* on November 22, 2019.[1] Ms. Young then wrote a short piece, commonly referred to as a "blurb" (the "Blurb"), to promote the Article. The Blurb was published on UTK's website. Thereafter, Dr. Cherry was interviewed by media outlets, including an interview for a podcast produced by the Australian Broadcasting Corporation.

Shortly thereafter, in December of 2019, Kathleen Marquardt submitted a TPRA request to UTK seeking documents related to the Article. Specifically, she requested the following records:

> All correspondence dated from August 1, 2019 through the date you process this request, inclusive – including also any attachments – that was, a) sent to or from or which copies cherry@utk.edu and that b) includes, anywhere, any of the following words/items: i) Mining Congress Journal, ii) coal, and/or iii) climate change.

UTK acknowledged receipt of the request and, after preliminary responses and several extensions, denied her TPRA request on the basis that the Materials were not public records as that term is defined under the TPRA.

Dissatisfied with UTK's response, Ms. Marquardt commenced this action by filing a petition for access to public records pursuant to the TPRA, Tenn. Code Ann. §§ 10-7-501

---

[1] Ms. Young was compensated by the *Huffington Post* for the right to publish the Article.

to -702, seeking judicial review of UTK's denial of her public records request.[2] She also served UTK with requests for production of documents, seeking to conduct discovery on UTK's position that the requested records were not created in connection with the transaction of official UTK business. Upon the motion of UTK, the trial court issued a protective order enjoining Ms. Marquardt from taking discovery. In the same order, the court instructed UTK to prepare the Materials for an in camera review.

On January 19, 2023, the trial court held a hearing on "certain pending issues." In the resulting order filed on February 22, 2023, the court noted that Ms. Marquardt had taken advantage of the provision of the act which "provides that the court, upon request, 'shall . . . issue an order requiring the defendant or respondent party or parties to immediately appear and show cause, if they have any, why the petition should not be granted.'"[3] Accordingly, the court ordered UTK to "appear and show cause why the petition filed in this case should not be granted. At such hearing, [UTK] shall bear the burden of proof for nondisclosure of the records sought."

Prior to the show-cause hearing provided for by the TPRA, Ms. Marquardt filed a motion for an "attorneys' eyes only" review of the Materials to assist counsel in preparing for the hearing. This motion was denied.

The show-cause hearing was held over two days, on March 28 and April 10, 2024. In addition to hearing arguments from counsel for the parties, the court heard testimony from two witnesses, Dr. Cherry and Ms. Young, and multiple exhibits were admitted into evidence. After the first day of the hearing, Ms. Marquardt became aware of Dr. Cherry's appearance on the Australian Broadcasting Corporation podcast. She attempted to have the podcast admitted into evidence for the second day of testimony, asking the court to take judicial notice of the recording. UTK contested the authenticity of the podcast, and the trial court denied its admission into evidence.

The trial court announced its ruling from the bench at the conclusion of the show-cause hearing, and its written order, which incorporated a transcript of its oral findings and conclusions of law, was entered on May 20, 2024. The court determined, inter alia, that

---

[2] The petition was filed on June 25, 2020.

[3] In the same order the trial court stated:

[I]t appears to the Court that the documents reflect activity that was personal in nature between individuals who were employees of corporations or businesses other than the University and a University professor, but it does not appear to the Court that the activity concerned any official transaction or business of the University. The Court is thus of the opinion that the records are not public records as that term is defined in the TPRA. Tenn. Code Ann. § 10-7-503(a)(1)(A).

"the requested records do not meet the definition of the statute; that these records were made or received pursuant to law or ordinance, or in [connection] with the transaction of official business by any governmental entity." For these reasons, the trial court denied the Petition.

This appeal by Ms. Marquardt followed.

After the filing of the notice of appeal, attorney Kaitlyn Hutcherson, counsel for Ms. Marquardt, learned that the documents UTK provided to the trial judge under seal for in camera review had been inadvertently placed in the public record instead of being maintained under seal by the circuit court clerk. Ms. Hutcherson learned of this on November 15, 2024, while reviewing the technical record provided to her by the circuit court clerk's office.

Knowing the court had ordered that the Materials be placed and maintained under seal, Ms. Hutcherson did not review the Materials.[4] Instead, she notified counsel for UTK that the Materials on file with the circuit court clerk were accessible to the public and not under seal. Although it is not part of the record on appeal, based on briefing and arguments of counsel on appeal, it appears that UTK did not motion the trial court to remove the documents from the public record until March of 2025. The motion was granted by the circuit court, and the Materials were placed under seal by the circuit court clerk. Thereafter, Ms. Marquardt filed with this court a Tennessee Rules of Appellate Procedure Rule 14 motion to include post-judgment facts related to this issue. The motion was granted by this court on April 14, 2025.[5]

## ISSUES

Ms. Marquardt raises five issues on appeal, which we have consolidated and restated as follows:

1. Whether the trial court erred in finding that the Materials in Ms. Marquardt's Tennessee Public Requests Act petition were not public records and thereby denying her petition.

---

[4] We credit attorney Hutcherson's professionalism for respecting that the trial court had placed the Materials under seal, which order remained in effect in spite of the clerk's office inadvertently placing the Materials in the public file.

[5] In pertinent part, the order of this court reads; "[T]he appellant's motion for consideration of post-judgment facts is hereby GRANTED as to the facts contained in the Declaration of Kaitlyn Hutcherson." All other issues were reserved, pending submission of the case for a decision on the merits.

2. Whether the trial court erred in excluding evidence at the show-cause hearing, including the recording of Professor Cherry's podcast interview with the Australian Broadcasting Corporation.

3. Whether the trial court erred in granting UTK's motion for protective order, thereby prohibiting Ms. Marquardt from conducting discovery.

4. Whether the trial court erred in denying Ms. Marquardt's motion for "attorneys' eyes only" review of the Materials prior to the show-cause hearing.

5. Whether UTK failed to take reasonable steps to protect the Materials from disclosure.

UTK raised no additional issues.

## STANDARD OF REVIEW

In reviewing the trial court's ruling that UTK's response to Ms. Marquardt did not violate the TPRA, our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Hamilton Cnty. v. Tax Year 2018 Delinq. Taxpayers*, No. E2024-00581-COA-R3-CV, 2024 WL 5132534, at *2 (Tenn. Ct. App. Dec. 17, 2024) (citing *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002)). Statutory construction is a question of law that is reviewable on a de novo basis without any presumption of correctness. *Brewer v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2023-00788-COA-R3-CV, 2023 WL 8281582, at *3 (Tenn. Ct. App. Nov. 30, 2023); *Gleaves v. Checker Cab Transit Corp.*, 15 S.W.3d 799, 802 (Tenn. 2000); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998).

The standard of review for questions regarding the admission of evidence is abuse of discretion. Under this standard, "'trial courts are accorded a wide degree of latitude in making such determinations, and will be overturned on appeal only upon a showing of abuse of discretion' such as 'appl[ying] an incorrect legal standard, or reach[ing] a decision which is against logic or reasoning or that causes an injustice to the party complaining.'" *Foothills Land Conservancy v. Creekside Estates P'ship*, No. E2023-01647-COA-R3-CV, 2024 WL 4537242, at *10 (Tenn. Ct. App. Oct. 22, 2024) (quoting *Biscan v. Brown*, No. M2001-02766-COA-R3-CV, 2003 WL 22955933, at *11 (Tenn. Ct. App. Dec. 15, 2003).

For the issues surrounding the protective order, we will also review using the abuse of discretion standard. *State ex rel. Slatery v. Chevron Corp.*, 578 S.W.3d 924, 926 (Tenn. Ct. App. 2018); *In re NHC–Nashville Fire Litig.*, 293 S.W.3d 547, 560 (Tenn. Ct. App. 2008).

ANALYSIS

## I. PUBLIC RECORDS UNDER THE TPRA

For over 120 years, Tennessee has protected the right of the public to access the records of government agencies. *State ex rel. Wellford v. Williams*, 110 Tenn. 549, 75 S.W. 948, 958 (1903). This right was codified in 1957 by the General Assembly with the passage of the TPRA ("The public records law is essentially a codification of the public access doctrine." *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)).

The TPRA defines "public records" as:

> all documents, papers, letters, maps, books, photographs, microfilms, electronic data processing files and output, films, sound recordings or other material, regardless of physical form or characteristics, made or received pursuant to law or ordinance or **in connection with the transaction of official business** by any governmental entity.

Tenn. Code Ann. § 10-7-503(a)(1)(A)(i) (emphasis added).

In determining whether the records fall under a statutory definition, we must evaluate each on a "case-by-case, or record-by-record" basis, *Brennan v. Giles Cnty. Bd. of Educ.*, No. M2004-00998-COA-R3-CV, 2005 WL 1996625, at *5 (Tenn. Ct. App. Aug. 18, 2005), considering the "totality of the circumstances." *Griffin v. City of Knoxville*, 821 S.W.2d 921, 924 (Tenn. 1991).

The issue here is whether the Materials were made or received in connection with the "official business" of UTK. Tenn. Code Ann. § 10-7-301(6). Ms. Marquardt contends that they were because they relate to UTK's stated goal of becoming a top-25 university, Dr. Cherry was at work when he found the Journal, and he used his UTK email account to respond to outside media inquiries after the Article was published in the *Huffington Post*. For its part, UTK contends that Dr. Cherry's interest in and his communication concerning the Journal were personal and not in connection with the transaction of official business of UTK. It also contends that Ms. Young's work on the Article was solely as a freelance journalist.

Two witnesses testified at the show-cause hearing: Dr. Cherry and Ms. Young.[6] And, significantly, the trial court found them both to be "very credible" witnesses. In pertinent part, Dr. Cherry testified that he is a professor in the Department of Civil and Environmental Engineering at UTK, his area of interest is transportation engineering, and

---

[6] Ms. Young's full legal name is Elan Young Lloyd. In professional circles she is identified as Elan Young.

his focus is on bicycle and pedestrian safety and sustainability, which he summarized as "how people get around cities." He also explained that his professional duties do not involve the environmental impact of coal or the science of climate change.

Regarding the Journal, as Dr. Cherry explained, after a colleague cleaned out her office, she informed her fellow faculty members that a "pile of old materials" destined for the recycling bin were on a table in the department, thus encouraging her colleagues to take what they desired. Although Dr. Cherry was looking for materials related to transportation, he found the August 1966 edition of the Journal to be of interest because his wife's ancestors were involved in the mining industry. As Dr. Cherry explained, he was "flipping to find some maybe old artifact of the era prior to [his] wife's life." He focused on an article titled "Air Pollution and the Coal Industry," which discussed the author's opinion that the amount of carbon dioxide in the earth's atmosphere was increasing rapidly due to the combustion of fossil fuels and related predictions of temperature and climate changes.

After showing the Journal article to his wife and family, Dr. Cherry shared it with a part-time UTK publicist and freelance journalist, Elan Young, because he knew that she was interested in environmental issues. As Ms. Young explained, she was a freelance journalist who also worked as a part-time employee with two UTK departments, the departments of Civil and Environmental Engineering and Nuclear Engineering.

Ms. Young testified that the article Dr. Cherry shared with her concerned the effects of coal on the environment, which she thought "might be a story," so she began working on a piece that she titled "Coal Knew, Too." Ms. Young testified that the work on the Article was "one hundred percent as a freelance journalist" and that she worked with a subject matter expert outside of UTK and with an editor at the *Huffington Post*. She acknowledged that she interviewed Dr. Cherry by telephone to add a "human interest element" to her story concerning how he found the Journal and why the article therein interested him. She did not, however, interview Dr. Cherry as a subject matter expert. She explained that she worked on the Article from home, using her personal email account, and she did not show a draft of the Article to anyone at UTK before it was published except for Dr. Cherry. While she shared the human-interest section concerning Dr. Cherry with him, he did not see the Article in full until it was published.

The trial court announced its ruling from the bench at the conclusion of the show-cause hearing, the transcript of which was incorporated in the final order. In pertinent part, the court stated that "Dr. Cherry and Ms. Young are very credible witnesses and have given this Court valuable insight with regard to the Petition and the content of the records that the Court has reviewed in camera." The court went on to note how Dr. Cherry found the Journal article and that he took it to share with his wife because his wife's family had been involved in the coal mining industry.

After noting that Dr. Cherry shared the Journal article with Ms. Young, the court

stated:

> Ms. Young, in her individual capacity, not having anything to do with her work for the University, decided to pursue it outside of the University; and said that she shopped it around to several publications. That she finally at some point got the attention of the Huffington Post. And, so, her testimony was clear that everything that she did with regard to this article, with the exception of talking to Dr. Cherry about how he found the article, was paid for by the Huffington Post. Was directed by the Huffington Post, and the University did not have anything to do with it. The only thing that the University had anything to do with was the article that was entered in the record as Exhibit Number 8 and also Exhibit 24, which is identical. And those are in the public domain and clearly are things that the Petitioner has access to. But just because Ms. Young and Dr. Cherry exchanged some emails through their University email address, does not raise the emails themselves to the level of being public records.

Based on these and other facts, the trial court determined that the Materials did not fall within the definition of public records as set out in Tennessee Code Annotated § 10-7-503. Applying the "totality of the circumstances" test required by *Griffin*, we agree with the trial court's determination. *Griffin*, 821 S.W.2d at 924.

In the case at bar, the Materials were comprised of correspondence regarding the Article and its creation. The Article was sponsored and published by the *Huffington Post*, not UTK. Dr. Cherry's interest in the Journal that generated the Article was personal rather than part of his professional work as a researcher at the university. Ms. Young completed the Article on her own time and was paid by the *Huffington Post*, rather than UTK, for her work. Importantly, both Dr. Cherry and Ms. Young testified to this effect at trial and there is no evidence to support a finding that their activities or communication were in connection with the transaction of official business by UTK. *See* Tenn. Code Ann. § 10-7-503(a)(1)(A).

It is also significant that the trial court found them to be "very credible" in their testimony that their activities related to the Article were not related to the university's "official business." Given that we must give great deference "to the trial court's determination of witness credibility because the trial judge could observe the witnesses' demeanor and hear in-court testimony," we will leave this finding undisturbed. *In re Houston D.*, 660 S.W.3d 704, 711 (Tenn. Ct. App. 2022) (citing *King v. Anderson Cnty.*, 419 S.W.3d 232, 246 (Tenn. 2013)). Thus, the correspondence regarding the creation of the Article was not made or received in connection with official business of the university.

We note, as Ms. Marquardt states, that after the Article ran in the *Huffington Post*, Ms. Young wrote the Blurb, a short piece describing and promoting the Article. Although

the Blurb was published on the UTK website, the purpose of the Blurb was to promote the Article, which was not created in connection with the official business of UTK. Admittedly, UTK may have indirectly benefitted from the Blurb being on its website. Nevertheless, the evidence preponderates against a finding that the Blurb related to the official business of UTK. Thus, it does not fall within the definition of public records.

## II. THE AUSTRALIAN BROADCASTING CORPORATION PODCAST

We now turn to the issue of whether the trial court erred in declining to admit the Australian Broadcasting Corporation podcast.

Shortly after the first day of the show-cause hearing, Ms. Marquardt obtained a recording of a podcast made by the Australian Broadcasting Corporation featuring Dr. Cherry. She proffered a copy of the recording stored on a USB drive as evidence that Dr. Cherry's interviews about the Article and the Journal were connected to his work as a UTK professor. UTK objected over questions of the recording's authenticity. Ms. Marquardt then asked the trial court to take judicial notice of the recording under Tenn. R. Evid. 201(b), which permits a court to take judicial notice of a fact if it is "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The trial court refused to take judicial notice and excluded the proffered evidence.

The admission or exclusion of evidence is reviewed under the abuse of discretion standard. *See State v. Clark*, 452 S.W.3d 268, 287 (Tenn. 2014). A trial court abuses its discretion when it "causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011).

Dr. Cherry's participation in a podcast is not a "generally known" fact in the jurisdiction. Furthermore, questions of authenticity surrounding a digital recording presented on a thumb drive can "reasonably be questioned." Therefore, we find no abuse of discretion in the trial court's decision to exclude the podcast.

## III. PROTECTIVE ORDER

Ms. Marquardt contends that the trial court erred in granting UTK's motion for protective order, thereby prohibiting her from obtaining discovery in advance of the show-cause hearing. As Ms. Marquardt explains, she sought discovery of UTK's documents, not for disclosure pursuant to her TPRA request, but in order to show the court that the Materials were part of UTK's official business. The trial court granted a protective order over those documents, preventing Ms. Marquardt's discovery.

"Generally, the granting, denying, or modifying of a protective order relating to discovery procedures under Rule 26.03 rests within the sound discretion of the trial court." *In re NHC–Nashville Fire Litig.*, 293 S.W.3d at 560 (citations omitted).

Judicial precedent is mixed concerning the right of discovery in the context of the TPRA. In her brief, Ms. Marquardt correctly identifies cases in which discovery has been allowed in a TPRA proceeding. However, UTK is correct that *Moncier v. Harris*, No. E2016-00209-COA-R3-CV, 2018 WL 1640072 (Tenn. Ct. App. Apr. 5, 2018) held that "Nowhere in [the TPRA] is document discovery contemplated, and the plain language of the statute precludes such a procedure." *Id.* at *11.

Although Ms. Marquardt was prevented from taking discovery prior to the show-cause hearing, she thoroughly cross-examined Dr. Cherry and Ms. Young during the show-cause hearing concerning the facts she sought to discover. Thus, although she may have preferred pre-trial discovery, she had the opportunity to gain the sought-after information at trial. Moreover, she has not shown any prejudice resulting from the delay in discovering their testimony.

The erroneous admission or exclusion of evidence is subject to harmless error analysis under Rule 36(b) of the Tennessee Rules of Appellate Procedure. *Blackburn v. Murphy*, 737 S.W.2d 529, 533–34 (Tenn. 1987). Rule 36(b) provides:

> A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more likely than not affected the judgment or would result in prejudice to the judicial process . . . .

Tenn. R. App. P. 36(b).

An error committed in a civil trial is not harmless "if the trial court's error would have "more probably than not affected the judgment or would result in prejudice to the judicial process." *In re Estate of Smallman*, 398 S.W.3d 134, 152 (Tenn. 2013). Here, Ms. Marquardt has failed to establish that the issuance of the protective order affected the judgment of the trial court or resulted in prejudice to the judicial process. Accordingly, the decision to issue the protective order, if error, was harmless error.

IV. "ATTORNEYS' EYES ONLY" REVIEW

The next issue for our review is whether the trial court erred in denying Ms. Marquardt's motion for an "attorneys' eyes only" review of the Materials prior to the show-cause hearing.

Ms. Marquardt requested the statutory show-cause hearing, which the trial court granted. In advance of a TPRA show-cause hearing, "the court may direct that the records being sought be submitted under seal for review by *the court and no other party*." Tenn. Code Ann. § 10-7-505(b) (emphasis added). Thus, the court ordered an in camera review of documents under seal but denied Ms. Marquardt's request for her attorneys to review the Materials.

Ms. Marquardt contends that her attorneys, as officers of the court, should be considered "the court" for purposes of this review. She contends that the statute's language that "no other party" besides the court may view the documents is not violated if only attorneys, and not their clients, review the Materials. We respectfully disagree.

While neither Ms. Marquardt nor UTK supported their respective positions on this narrow issue with case law, we find the in camera language of the statute clear and unambiguous. It reads, "the court may direct that the records being sought be submitted under seal for review by *the court and no other party*." Tenn. Code Ann. § 10-7-505(b) (emphasis added).

In statutory interpretation, "when statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would extend the meaning of the language. . . ." *State v. Welch*, 595 S.W.3d 615, 621 (Tenn. 2020), *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009). As such, we see no reason to expand "the court" to include counsel. Thus, the trial court did not err in denying Ms. Marquardt's counsel "attorneys' eyes only" review.

## V. THE SEALED RECORDS PLACED INTO THE PUBLIC RECORD

We now consider whether the Materials being placed into the public record nullifies their protections as documents under seal.

Ms. Marquardt argues that the error that resulted in the placement of the documents in the technical record is analogous to cases in which documents protected from opposing counsel by attorney-client privilege lost their protections. In the cases cited in support of this argument, courts declared that once privileged documents had been disclosed, even in error, it was too late to "unring the bell." *Wunderlich-Malec Sys., Inc. v. Eisenmann Corp.*, No. 05 C 4343, 2007 WL 3086006, at *6 (N.D. Ill. Oct. 18, 2007).

Unlike the cases cited by Ms. Marquardt, the documents here were not disclosed due to attorney error. Additionally, the protections in the cases mentioned were due to attorney-client privilege, not a protective order by a court. Further, the Materials in the current case were not viewed by anyone other than the trial court and UTK's counsel.

In authority cited by Ms. Marquardt, *Universal Strategy Group v. Halstead*, No. 16-

15-BC (Davidson Co. Chancery Ct. May 17, 2018) (order granting defendant's motion, at *4), the chancery court held that accidentally disclosed documents "must be open and not subject to privilege because there is no practical way for [the opposing party] to disregard this information that he has already read, and to erase it from his memory." By contrast, neither Ms. Marquardt nor her counsel has read the Materials. Although the Materials were inadvertently made available to the public by the circuit court clerk's staff, and through no fault of counsel or a party, there is no evidence that the Materials were accessed by the public or another party. Therefore, there is no concern over an inability to "erase it from . . . memory." *Id*.

Ms. Marquardt also cites *EEOC v. Whiting-Turner Contracting Co.*, No. 3:21-CV-00753, 2022 WL 3221825 (M.D. Tenn. Aug. 9, 2022), in which a government agency inadvertently disclosed materials in response to a FOIA request. *Whiting-Turner* cited the "public domain doctrine" in which "materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Id.* at *5. The court went on to give the three-part test from *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 765–66 (D.C. Cir. 1990) to determine if information had become part of the public domain:

> First, the information requested must be as specific as the information previously released. Second, the information requested must match the information previously disclosed . . . . Third, we held that the information requested must already have been made public through an official and documented disclosure.

The disclosure due to the clerk's inclusion of the Materials in the technical record fails on the third prong. ("The government waives the ability to exempt a document under FOIA only after it has already released the same information to the public." *Rocky Mountain Wild, Inc. v. U.S. Forest Serv.*, 56 F.4th 913, 930 (10th Cir. 2022)).

Therefore, the protections concerning the documents were not nullified by their inadvertent placement in the trial court clerk's public record.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court. Costs of appeal are taxed to Ms. Marquardt.

_____
FRANK G. CLEMENT JR., P.J., M.S.